1

2

3

4

5

6

7                                                          The Honorable Thomas S. Zilly

8                    **UNITED STATES DISTRICT COURT**
                 **WESTERN DISTRICT OF WASHINGTON**
9                            **AT SEATTLE**

10   THE SECOND AMENDMENT                    NO. 2:23-cv-01554-TSZ
     FOUNDATION; THE CITIZENS
11   COMMITTEE FOR THE RIGHT TO KEEP         DEFENDANTS' MOTION TO
     AND BEAR ARMS; LIBERTY PARK             DISMISS
12   PRESS; MERRIL MAIL MARKETING;
     CENTER FOR THE DEFENSE OF FREE          NOTE ON MOTION CALENDAR:
13   ENTERPRISE; SERVICE BUREAU              NOVEMBER 17, 2023
     ASSOCIATION; and ALAN GOTTLIEB,
14
                          Plaintiffs,
15
           v.
16
     ROBERT FERGUSON, individually and in
17   his official capacity as Washington Attorney
     General; JOSHUA STUDOR, individually
18   and in his official capacity as Washington
     Assistant Attorney General, Consumer
19   Protection Division; THE ATTORNEY
     GENERAL'S OFFICE FOR THE STATE
20   OF WASHINGTON; and JOHN DOES 1-10,

21                        Defendants.

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ                                      Complex Litigation Division
                                                           800 Fifth Avenue, Suite 2000
                                                           Seattle, WA  98104-3188
                                                                (206) 464-7744

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ 1

II.  BACKGROUND ............................................................................................. 2

   A.  Statutory Background ........................................................................... 2

   B.  Factual Background .............................................................................. 2

   C.  This Action ........................................................................................... 3

III. ARGUMENT ................................................................................................. 4

   A.  Legal Standard .................................................................................... 4

   B.  SAF's Claims Are Not Ripe ................................................................ 5

      1.  SAF's claims are not constitutionally ripe ............................. 5

      2.  SAF's suit is not prudentially ripe .......................................... 8

   C.  SAF's § 1983 Claims Are Barred by Immunity and Lack Merit (Counts I–III) ..... 11

      1.  SAF's claims for monetary damages are barred by absolute immunity ......... 12

      2.  Qualified immunity also bars SAF's claims for damages under § 1983, and SAF's failure under the first prong requires dismissal of their claims for injunctive and declaratory relief ................ 15

         a.  The Complaint does not plead a constitutional violation ........................ 15

           (1)  Viewpoint discrimination ................................. 15

           (2)  First Amendment retaliation ........................... 17

           (3)  Unreasonable search ....................................... 18

         b.  There was no violation of clearly established law .................................... 20

   D.  SAF's State Law Claims Should Be Dismissed (Counts IV–V) ...... 21

      1.  SAF's abuse of process must be dismissed on the merits ......... 21

      2.  SAF's PRA Claim is Premature ......................................... 23

   E.  The Court Should Award the State Attorney Fees ............................ 24

IV. CONCLUSION ............................................................................................ 24

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I.    INTRODUCTION

As Washington's chief law enforcement officer, the Attorney General is charged with safeguarding the public by enforcing laws governing nonprofits and charitable organizations. The Attorney General's Office (AGO) has broad statutory authority to investigate potential violations of these laws, including through the issuance of Civil Investigative Demands (CIDs). Roughly two years ago, the AGO began investigating Alan Gottlieb and the Second Amendment Foundation (SAF) for potential violations of Washington law. The AGO served CIDs on various Gottlieb-related entities, seeking information regarding their business practices. Plaintiffs (collectively SAF) did not challenge the CIDs as inappropriate or unduly burdensome under the governing statute. Instead, they now seek to shut down the AGO's investigation, based on unsupported assertions of bias. This is untenable as a matter of law and policy.

As court after court has found while rejecting lawsuits just like this one, targets cannot use the courts to stymie civil investigations, particularly when they have an effective alternative means to challenge the CIDs. *See, e.g.*, *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022); *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016); *Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003). Like these prior lawsuits, SAF's Complaint is long on unsupported theories but short on cognizable claims. SAF's claims are unripe both because they fail to allege a concrete injury stemming from the AGO's investigation and because the AGO's investigation is ongoing. No final enforcement decision has been made, and the AGO would be prejudiced by having to litigate issues overlapping with an active investigation. If SAF's claims are ripe, the § 1983 claims nevertheless fail because the Attorney General and his staff are entitled to absolute quasi-judicial immunity for issuing CIDs. And even if absolute immunity did not apply, qualified immunity would.

SAF's Complaint does not allege facts sufficient to show that any defendant violated SAF's constitutional rights, let alone clearly established law, by investigating SAF's potential violation of state law. The AGO's motion to dismiss should therefore be granted.

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

## II.     BACKGROUND

### A.     Statutory Background

The Charitable Solicitations Act, RCW 19.09 (CSA); the Washington Nonprofit Corporation Act, RCW 24.03A (NpCA); and the Consumer Protection Act, RCW 19.86 (CPA) all vest the AGO with broad enforcement authority over nonprofit corporations and charitable organizations. Both the CPA and NpCA specifically authorize the AGO to issue CIDs to any person or entity who may have relevant information, while the CSA empowers the AGO to investigate "as the attorney general deems necessary to determine . . . whether any entity has violated . . . th[e CSA]." RCW 19.86.110; RCW 24.03A.952; RCW 19.09.400(1).

But the AGO's powers are not boundless; they are subject to state-court challenge. The CID statute requires the AGO to "[s]tate the statute" under which it is investigating "and the general subject matter of the investigation." RCW 19.86.110(2)(a).[1] The AGO cannot make any request that would be "unreasonable or improper" in civil discovery. RCW 19.86.110(3)(a)–(b). The AGO is also generally prohibited from disclosing CID responses absent consent or a court order, ensuring that investigatory materials remain confidential. *See* RCW 19.86.110(7). CIDs are not self-executing; they require the AGO to file an enforcement petition if the recipient fails to cooperate. RCW 19.86.110(9). Further, any CID recipient may contest the demand by filing a petition in superior court to modify or set aside the CID for "good cause" within twenty days after the CID has been served. *See* RCW 19.86.110(8).

### B.     Factual Background

Approximately two years ago, the AGO began investigating SAF for potential violations of Washington's nonprofit and charitable organization laws. *See* Dkt. # 1-2 ("Compl.") ¶¶ 27, 31. The AGO—as permitted by statute—obtained court orders allowing it to issue confidential CIDs to third parties for financial and other business records. *Id.* ¶¶ 28–30; *see*

---

[1] RCW 24.03A.952 generally provides the same procedural protections for CIDs issued under the NpCA.

2

1   RCW 19.86.110(6).[2] After receiving responses, the AGO served SAF with CIDs seeking

2   information regarding their potential violations of the CPA and the CSA. Compl. ¶ 31. SAF

3   alleges they did "[n]ot understand[] the point of the investigation," *id.* ¶ 32, but nevertheless

4   "retained counsel to assist them with responding to the demands," *id.* At no point did SAF or

5   their counsel request that the state courts modify or set aside the CIDs. *See* RCW 19.86.110(8).

6       Instead, on January 23, 2023, counsel for SAF wrote to the Assistant Attorney General

7   (AAG) assigned to the matter, Joshua Studor, "demanding the investigation cease . . . ."

8   Compl. ¶ 40. Studor declined, as the "investigation, which is ongoing, has uncovered significant

9   evidence that your clients have violated the law." Fraas Decl. Ex. A at 1.[3] As AAG Studor

10  explained, "our job is to follow the evidence and the law" and "[w]e intend to do so." *Id.* at 1.

11  **C.    This Action**

12      Having declined to seek relief from the CIDs (or not to comply with them), SAF instead

13  filed suit last spring against Attorney General (AG) Ferguson, AAG Studor, the AGO, and "John

14  Does 1-10" (collectively referred to herein as the AGO), alleging federal constitutional violations

15  and asking this Court to terminate the State's investigation. Civil Rights Compl. for Damages

16  and Inj. Relief, *Second Amendment Found. v. Ferguson*, No. 2:23-cv-00647-MJP (W.D. Wash.

17  May 3, 2023), Dkt. #1. The AGO moved to dismiss because, among other reasons, SAF's claims

18  were not ripe and failed on the merits. Defs.' Mot. to Dismiss, *Second Amendment Found. v.*

19  *Ferguson*, No. 2:23-cv-000647-MJP (W.D. Wash. June 12, 2023), Dkt. #14. Rather than respond

20  to the motion, SAF voluntarily dismissed its case, while simultaneously claiming that the AGO's

21  grounds for dismissal were "meritless." Pls.' Notice of Voluntary Dismissal Without Prejudice

22  at 1, *Second Amendment Found. v. Ferguson*, No. 2:23-cv-000647-MJP (W.D. Wash. July 10,

23  2023), Dkt. #19. SAF then turned around and filed *the exact same federal claims* in state court.

24

25      [2] Those orders merely "prohibit[ed] [the accountants] from notifying SAF or otherwise discussing CPD's
    demands." Compl. ¶ 28.
26      [3] Fraas Decl. Ex. A is incorporated in the Complaint by reference. *See* Compl. ¶ 40.

*See* Dkt. # 1-2. Because SAF's claims were voluntarily dismissed prior to any review or decision by this Court, the AGO removed, and here the parties are again. Dkt. #1.[4]

The gravamen of SAF's complaint is that the AGO is investigating SAF "because Mr. Ferguson and his subordinates disagree with their political beliefs . . . ." Compl. ¶ 42. The ostensible factual bases for this conclusion are AG Ferguson's "'legal record against the Trump Administration,'" his "'doubl[ing] the size of the Consumer Protection Division,'" his work on "gun control policy," his 2018 "endorse[ment] [of] a ballot measure" aimed at raising the age to purchase a semi-automatic rifle, and his defense of "gun control measures in court"—including defending multiple cases SAF brought over the last decade to challenge gun reform. *Id.* ¶¶ 13–14, 21–22, 24. Asserting that the investigation might "chill Plaintiffs' First Amendment activity," Compl. ¶ 42, SAF asks the Court to declare that the AGO's CIDs violated the U.S. Constitution, enjoin the AGO from "serving or enforcing further CIDs," require the AGO to "return or destroy all nonpublic documents" obtained via CID, and award damages. *Id.* at 34–35.

### III.   ARGUMENT

#### A.   Legal Standard

When a party moves under Rule 12(b)(1), the Court accepts the truth of plaintiff's factual allegations and evaluates whether they are sufficient to invoke federal jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121–22 (9th Cir. 2014). Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleging such theory. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This requires "the plaintiff [to] plead[] factual content that allows the court to draw the

---

[4] Because the AGO decided to remove this matter, it does not re-assert the *Younger* abstention argument in this motion to dismiss. *See Ohio Bureau of Emp. Servs. v. Hodory*, 431 U.S. 471, 480 (1977).

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1  reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation

2  omitted).

3      Despite taking a second run at the allegations, SAF's Complaint fails on multiple

4  grounds. First, SAF's claims are not ripe. And even if they were, SAF's federal claims are

5  facially inadequate because they are unsupported by specific factual allegations, and the

6  individual defendants are entitled to immunity in any event. As the two remaining state claims

7  are also deficient, the AGO's motion to dismiss should be granted in its entirety.

8  **B.**    **SAF's Claims Are Not Ripe**

9      The ripeness doctrine "is drawn both from Article III limitations on judicial power and

10  from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of*

11  *Interior*, 538 U.S. 803, 808 (2003) (cleaned up). "[I]ts basic rationale is to prevent the courts,

12  through avoidance of premature adjudication, from entangling themselves in abstract

13  disagreements over administrative policies, and also to protect the agencies from judicial

14  interference until an administrative decision has been formalized and its effects felt in a concrete

15  way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).

16  Ripeness has both "constitutional and prudential" components. *Twitter*, 56 F.4th at 1173. SAF's

17  claims are unripe under both prongs, as SAF (i) fails to allege any cognizable injury with

18  concreteness and particularity, making this case constitutionally unripe; and (ii) seeks to enjoin

19  non-final agency action that is contingent upon future factual developments, making this case

20  prudentially unripe.

21      **1.**    **SAF's claims are not constitutionally ripe[5]**

22      "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong

23  of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th

24        [5] SAF may argue that it is inconsistent to remove a case and then argue that the case is constitutionally
25  unripe. To the extent that SAF now concedes that it has not suffered a constitutional injury, then remand pursuant
to 28 U.S.C. § 1447(c) is appropriate. Absent such a concession, however, this Court should decide whether it does
26  in fact have subject matter jurisdiction, particularly given that SAF has continued to allege that the AGO's
objections to constitutional ripeness are "baseless" and "meritless." *See* Compl. ¶ 45 & n.17; Pls.' Notice of
Voluntary Dismissal Without Prejudice at 1, *Second Amendment Found. v. Ferguson*, No. 2:23-cv-000647-MJP

DEFENDANTS' MOTION TO DISMISS       5       ATTORNEY GENERAL OF WASHINGTON
NO. 2:23-CV-01554-TSZ                  Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1   Cir. 2003). "Whether framed as an issue of standing or ripeness," a party must show "'an

2   invasion of a legally protected interest that is (a) concrete and particularized[,] and (b) actual or

3   imminent, not conjectural or hypothetical.'" *Twitter*, 56 F.4th at 1173 (quoting *Lujan v. Defs. of*

4   *Wildlife*, 504 U.S. 555, 560, 112 (1992)). "A concrete injury need not be tangible but 'must

5   actually exist.'" *Id.* at 1175 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). SAF

6   cannot establish injury in fact by vague insinuations that the AGO's investigation *might* chill

7   their protected speech, that they have expended legal fees, or that third parties *may* decide not to

8   do business with them *someday*.

9        A party's "naked assertion" that its speech was chilled is insufficient to establish injury.

10   *Id.* at 1174–75. The Ninth Circuit's recent decision in *Twitter v. Paxton* is instructive here. There,

11   Twitter sought to enjoin the Texas Attorney General from investigating Twitter's content-

12   moderation policies and enforcing a CID. *Id.* at 1172. Twitter alleged the investigation was

13   unlawful retaliation for protected speech. *Id.* The Ninth Circuit held that Twitter's case was not

14   ripe.[6] *Id.* at 1173. Specifically, Twitter's assertions that the CID and investigation "impeded" its

15   ability to "freely make its own decisions," "chill[ed] Twitter's speech," and "forced [the

16   company] to weigh the consequence[s] of a burdensome investigation" when making decisions,

17   taken individually or collectively, did not satisfy Article III. *Id.* at 1175. To the contrary,

18   Twitter's assertions were "vague" and referred only to "a general possibility of retaliation." *Id.*

19   An employee's sworn testimony that he believed the investigation would result in "significant

20   diminishment of the willingness of Twitter employees to speak candidly and freely in internal

21   content moderation decisions" was likewise insufficient: the "highly speculative" statements did

22   not show the "CID has actually chilled employees' speech or Twitter's content moderation

23

24   _____

25   (W.D. Wash. July 10, 2023), Dkt. #19. Such a determination is needed because to the extent SAF's claims *are* constitutionally ripe, this Court is undoubtedly the appropriate court to address prudential ripeness and/or the merits of Plaintiffs' claims, given this Court's original jurisdiction. *See* 28 U.S.C. § 1331.

26      [6] The Ninth Circuit initially affirmed dismissal on prudential ripeness grounds. *Twitter, Inc. v. Paxton*, 26 F.4th 1119 (9th Cir. 2022). On reconsideration, it found Twitter's claims were not ripe on constitutional grounds. *Twitter*, 56 F.4th at 1173.

DEFENDANTS' MOTION TO DISMISS                    6
NO. 2:23-CV-01554-TSZ

1  decisions; the employee only claims that it would 'if the CID and investigation were allowed to

2  proceed.'" *Id.* (quoting *Spokeo*, 578 U.S. at 340).

3      Here, as in *Twitter*, SAF's Complaint makes no concrete allegation that the AGO's

4  investigation has *actually* chilled SAF's speech. Instead, SAF speculates that the AGO "hope[s]

5  *to* chill Plaintiffs' First Amendment activity," and that its "treatment of Mr. Gottlieb is designed

6  to . . . chill the activities of SAF and the other entities . . . ." Compl. ¶¶ 44, 68. This is far less

7  concrete than even *Twitter's* inadequate "naked assertion[s] that its speech has been chilled".

8  *Twitter*, 56 F.4th at 1175. Moreover, unlike in *Twitter*, SAF does not claim their speech *will be*

9  chilled if the AGO's investigation is allowed to proceed; indeed, SAF's political activity has

10  continued full speed during the course of the investigation. *See* Compl. ¶¶ 24, 31 (investigation

11  known to SAF by May 2022, *Sullivan* suit filed June 2022).

12      SAF's Complaint attempts to pre-emptively rebut this ripeness argument, citing *White v.*

13  *Lee* to argue that "it is well established that no speech actually needs to be chilled in order for a

14  plaintiff to bring a First Amendment claim based on a discriminatory, retaliatory investigation."

15  Compl. ¶ 45, n.17 (citing *White v. Lee*, 227 F.3d 1214, 1241 (9th Cir. 2000)). But the *Twitter*

16  Court specifically distinguished *White*, explaining that *White* "doesn't address ripeness at all."

17  *Twitter*, 56 F.4th at 1177. "[E]ven more to the point," the Court continued, "in *White*, the

18  plaintiffs would have had no opportunity to challenge any aspect of the investigation until formal

19  charges were brought, at which point they could have faced a large fine." *Id.* (citing *White*,

20  277 F.3d at 1222). "But here," as in *Twitter*, the plaintiff "'faces no such consequence' because

21  it can raise its First Amendment defense if [the Attorney General] moves to enforce the CID."

22  *Id.* (quoting *Twitter, Inc. v. Paxton*, No. 21-cv-01644-MMC, 2021 WL 1893140 (N.D. Cal.

23  May 11, 2021); *see also Tex. State Troopers Ass'n, Inc. v. Abbott*, No. A-13-CA-974-SS,

24  2014 WL 12479651, at *2 (W.D. Tex. Apr. 16, 2014) ("[T]hreatened enforcement is primarily

25  relevant insofar as it relates to some actual chilling of a plaintiffs constitutionally protected

26  conduct as a result of the threat . . . and Plaintiffs' Complaint contains only vague references to

1  the notion of a chilling effect, not any specific factual allegations indicating Plaintiffs' actual

2  conduct has been chilled or will be altered in any way going forward.") (citing *Laird v. Tatum*,

3  408 U.S. 1, 13–14 (1972)).

4        Nor do SAF's other alleged injuries render their claims constitutionally ripe. SAF claims

5  they have been "forced to expend hundreds of man hours and tens of thousands of dollars in

6  legal fees responding to [the AGO's] CIDs" and suffered "considerable stress" as a result of the

7  CIDs. Compl. ¶ 58. But SAF could have moved to set aside the CID rather than respond.

8  RCW 19.86.110(8). SAF chose not to, and instead "retained counsel to assist them with

9  responding to the demands." Compl. ¶ 32. SAF's decision to voluntarily cooperate with the CIDs

10 is not an injury. *See Twitter*, 56 F.4th at 1176 ("[T]o the extent Twitter argues that any actions it

11 has taken in response to the CID create an Article III injury, those injuries are self-inflicted

12 because the actions were voluntary.") (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418

13 (2013)).[7]

14        Finally, SAF's alleged reputational injuries stemming from CIDs to third parties are

15 speculative. SAF says the AGO served CIDs on SAF vendors beginning around June 2021.

16 Compl. ¶¶ 28–29. Yet, two years later, SAF conjectures only that vendors "*may* cease to do

17 business with plaintiffs[.]" *Id.* ¶ 58. This hypothetical injury likewise falls short.

18        **2.    SAF's suit is not prudentially ripe**

19        If the Court determines SAF has alleged an Article III injury, its claims should be

20 dismissed on prudential ripeness grounds. *Thomas v. Anchorage Equal Rts. Comm'n*,

21 220 F. 1134, 1141 (9th Cir. 2000). Prudential ripeness turns on consideration of two factors: (1)

22 "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding

23 court consideration." *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021)

24 (citation omitted).

25
26        [7] CIDs are not self-enforcing. In the event of noncompliance with a CID, the AGO may seek to compel compliance only by filing a petition to enforce. RCW 19.86.110(9). Thus, if SAF had refused to comply with the CIDs, only a court could have compelled compliance.

Courts considering exactly these types of suits by parties seeking to terminate ongoing investigations routinely dismiss them on prudential ripeness grounds. *See, e.g.*, *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) ("[U]ncertainties" in whether an investigation will result in findings or enforcement " render plaintiffs' action unfit for judicial resolution at this time."); *Google*, 822 F.3d at 228 ("[N]either the issuance of the non-self-executing administrative subpoena nor the possibility of some future enforcement action created an imminent threat of irreparable injury ripe for adjudication."); *Ammex*, 351 F.3d at 709 ("Enforcement of the [Michigan Consumer Protect Act] against [Plaintiff] is . . . tentative and subject to agency reconsideration"); *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Cntys.*, 150 F. App'x 389, 397–98 (6th Cir. 2005) ("Without knowledge of what that form [any enforcement action] will be, this court does not have the concrete context necessary for judicial review. Nor should this court deprive the defendants of the opportunity to develop procedures and processes to handle any future [enforcement actions]."); *Univ. of Med. & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57, 69 (3d Cir. 2003) (holding action to enjoin an investigation was not ripe because "an investigation is the beginning of a process that may or may not lead to an ultimate enforcement action"); *Portland Gen. Elec. Co. v. Myers*, No. Civ. 03-CV-1641-HA, 2004 WL 1722215, at *2 (D. Or. 2004); *Tex. State Troopers Ass'n*, 2014 WL 12479651, at *3; *CBA Pharma, Inc. v. Harvey*, No. 3:21-CV-00014-GFVT, 2022 WL 983143, at *3 (E.D. Ky. Mar. 30, 2022), *aff'd sub nom. CBA Pharma, Inc. v. Perry*, No. 22-5358, 2023 WL 129240 (6th Cir. Jan. 9, 2023). This case is no different.

As to the first ripeness factor, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citation omitted). SAF challenges an ongoing AGO investigation and, by doing so, asks the Court to decide issues of fact at a time when the AGO has not yet made a final enforcement determination. SAF alleges that the AGO's

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

investigation is "baseless and motivated by sheer political animus[.]" Compl. ¶ 40. Plainly, any claim that the AGO's investigation is "baseless" requires the completion of that investigation. But SAF asks the Court to simply infer extraordinary law enforcement bias from their *ipse dixit* contentions that they do "[n]ot understand[] the point of the investigation" and are "[a]t a loss regarding CPD's motives," and assertions that an Assistant Attorney General declined "to provide any instructions on how [SAF] could bring their conduct into compliance with the law" during an active investigation. *Id.* ¶¶ 32, 34, 41.[8] This does not meet minimum pleading requirements for "factual content that allows the court to draw the reasonable inference" of misconduct. *Iqbal*, 556 U.S. at 678. Alarmingly, litigating such fact issues would require the AGO to reveal and justify its ongoing decision-making to both the investigative target and the public or suffer the disadvantage of "being forced to defend [the investigation] in a vacuum . . . ." *Thomas*, 220 F.3d at 1142.

Moreover, because the action SAF challenges is not final, their requested relief rests on contingencies. *See Ass'n of Am. Med. Colls.*, 217 F.3d at 781 ("An investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action."); *CBA Pharma*, 2022 WL 983143, at *3 ("The investigation in this matter has not concluded, which means that the Department has not even decided whether it will, in fact, take any action[.]"). SAF asks the Court to declare an ongoing state investigation unconstitutional and enjoin hypothetical future CIDs and enforcement actions that may never come to pass. The Court should find SAF's attempts to end-run an ongoing AGO investigation not ripe for judicial review.

To meet the second ripeness requirement, plaintiffs must show that withholding judicial review would lead to "[d]irect and immediate hardship" that will require "an immediate and

---

[8] While the AGO's investigation remains confidential, SAF's suggestion that it has no idea what the AGO might be investigating is belied by Mr. Gottlieb's public statements defending his entities' financial dealings. Stephen Gutkowski, *Podcast: Second Amendment Foundation's Alan Gottlieb Responds to Financial Questions*, The Reload (May 21, 2023), available at https://thereload.com/podcast-second-amendment-foundations-alan-gottlieb-responds-to-financial-questions/.

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ                                        10                    ATTORNEY GENERAL OF WASHINGTON
                                                                                                Complex Litigation Division
                                                                                                800 Fifth Avenue, Suite 2000
                                                                                                Seattle, WA  98104-3188
                                                                                                (206) 464-7744

significant change in the plaintiff['s] conduct of their affairs with serious penalties attached to noncompliance." *Stormans*, 586 F.3d at 1126 (cleaned up). But SAF cannot establish hardship for the same reason they cannot establish injury. *Tex. State Troopers Ass'n*, 2014 WL 12479651, at *3 ("Plaintiffs cannot establish hardship because they have not alleged their conduct has changed, or will change, in any way as a result of the Attorney General's conduct."). Moreover, SAF has ample alternatives to protect themselves: they could have "challenge[d] the scope of" the CIDs as provided in RCW 19.86.110(8), including for the reasons raised in the Complaint, *CBA Pharma, Inc.*, 2023 WL 129240, at *4; they "could raise its objections to the [CIDs] if [the AGO] ever brings an" action to enforce the CIDs, *Google*, 822 F.3d at 225; RCW 19.86.110(9); and, if the AGO files an enforcement action against SAF, they can litigate their alleged grievances in that lawsuit. Indeed, the case SAF features in their Complaint demonstrates this point. *Compare TVI Inc. v. Ferguson*, No. C17-1845 RSM, 2018 WL 1610220, at *4 (W.D. Wash. Apr. 3, 2018) (dismissing federal suit challenging the AGO's CPA investigation on constitutional grounds) with *Washington v. TVI, Inc.*, 524 P.3d 622, 627 (Wash. 2023) (state court merits decision on CPA claims).

Finally, courts also consider the hardship to the defendant and the court from litigating unripe claims. *See, e.g.*, *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1129 (9th Cir. 2009); *Thomas*, 220 F.3d at 1142. Here, the lawsuit seeks to force the AGO to justify an ongoing investigation, and to litigate issues substantially overlapping with the merits of the investigation when it has not made a final enforcement determination. Allowing this case to proceed at this juncture will make every AGO investigation susceptible to collateral attack. That is untenable. This Court should dismiss SAF's complaint on prudential ripeness grounds.

## C.   SAF's § 1983 Claims Are Barred by Immunity and Lack Merit (Counts I–III)

If the Court determines SAF's § 1983 claims against the two individual defendants are ripe, they must be dismissed because they fail as a matter of law. Specifically, they are barred by absolute immunity because AG Ferguson and AAG Studor are acting in a prosecutorial or

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ
11
ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

quasi-judicial role. They are also barred by qualified immunity because SAF cannot show that either defendant violated clearly established law. SAF's failure to allege a viable claim likewise dooms their request for equitable and declaratory relief.

### 1.    SAF's claims for monetary damages are barred by absolute immunity

SAF's § 1983 seeks monetary damages against AG Ferguson and AAG Studor in their personal capacity. Compl. at 25 (Count I caption), 27 (Count II caption), 29 (Count III caption). But both have absolute immunity for actions taken in their prosecutorial or quasi-judicial capacity. Absolute prosecutorial or "quasi-judicial" immunity is based on considerations similar to those that underlie the absolute immunity judges enjoy, including the "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler v. Pachtman*, 424 U.S. 409, 423 (1976). Government officials whose duties include deciding whether to commence enforcement proceedings *must* be able to make such decisions free from intimidation or harassment and are therefore entitled to absolute immunity for such decisions. *Butz v. Economou*, 438 U.S. 478, 515 (1978).

This quasi-judicial immunity affords the same protection to civil enforcement proceedings as criminal ones. *Id.* Absolute immunity applies to a "government attorney's initiation and handling of civil litigation in a state or federal court." *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991). "Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is 'necessary to assure that . . . advocates . . . can perform their respective functions without harassment or intimidation.'" *Id.* at 837 (quoting *Butz*, 438 U.S. at 512)); *see also Scott v. Hern*, 216 F.3d 897, 908–09 (10th Cir. 2000) ("[S]tate attorneys and agency officials who perform functions analogous to those of a prosecutor in initiating and pursuing civil and administrative enforcement proceedings are absolutely immune from suit under section 1983

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

concerning activities intimately associated with the judicial process.") (cleaned up). This broad immunity applies to state attorneys investigating and initiating consumer protection and other civil enforcement actions. *Ledwith v. Douglas*, 568 F.2d 117, 119 (8th Cir. 1978) (dismissing claims against attorneys in the Consumer Protection Division of the Nebraska Attorney General's Office on the basis of absolute immunity); *McGary v. Cunningham*, No. C13-5130 RBL-JRC, 2013 WL 5913434, at *2 (W.D. Wash. 2013) (dismissing claims, on the basis of absolute immunity, against Washington Assistant Attorney General); *McCormick v. City of Lawrence, Kansas*, 253 F.Supp.2d 1156, 1166–67 (D. Kan. 2003) (dismissing complaint against Assistant Attorneys General in the Kansas Attorney General's Consumer Protection Division, on the basis of absolute immunity).

Importantly, "[a]bsolute immunity also protects those functions in which the attorney acts as an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "These actions need not relate to a particular trial and may even be administrative in nature, yet are connected to the trial process and 'necessarily require legal knowledge and the exercise of related discretion.'" *Id.* (citation omitted). "Functions for which absolute prosecutorial immunity have been granted include the lawyerly functions of organizing and analyzing evidence and law, and then presenting evidence and analysis to the courts and grand juries on behalf of the government; they also include internal decisions and processes that determine how those functions will be carried out." *Id.* (citation omitted). These functions include the issuing of a CID or subpoena duces tecum, *see Garmon v. County of Los Angeles*, 828 F.3d 837, 844 (9th Cir. 2016), as well as the "broad discretion in deciding whether a proceeding should be brought," *Butz*, 438 U.S. at 515.

The Attorney General and his AAGs have duties as advocates for the State, including issuing CIDs to decide whether to bring an enforcement action, that are entitled to absolute immunity. The AGO has statutory authority to serve CIDs if the AGO believes such information

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    is relevant to the subject matter of an investigation into a possible legal violation—an act

2    indisputably connected to the trial process. Indeed, the issuance of a CID is a core duty of the

3    Attorney General in his "role as advocate for the State," even though it is "preliminary to the

4    initiation of a prosecution" and occurs "apart from the courtroom." *Lacey*, 693 F.3d at 929

5    (quoting *Imbler*, 424 U.S. at 431 & n.33). The procedural safeguards in state law, which provide

6    for judicial oversight of CIDs, give enforcement targets "ample opportunity to challenge the

7    legality" of a CID and "provide sufficient checks on agency zeal[.]" *Butz*, 438 U.S. at 515–16;

8    *see supra* Section II.A.

9         SAF's complaint is a near-perfect illustration of why absolute immunity is necessary.

10   SAF ascribes a variety of malicious motives and unconstitutional animus to AG Ferguson and

11   AAG Studor without any evidence that these officials' actions were improper, while skipping

12   right over the procedural protections and judicial oversight provided by state law. If suits like

13   this one are permitted to proceed, the floodgates will be thrown wide open because "a defendant

14   often will transform . . . resentment at being prosecuted into the ascription of improper and

15   malicious actions to the State's advocate." *Imbler*, 424 U.S. at 425; *see also Butz*, 438 U.S. at

16   512 (explaining that "[t]he loser in one forum will frequently seek another, charging the

17   participants in the first with unconstitutional animus," and "[a]bsolute immunity is thus

18   necessary to assure that judges, advocates, and witnesses can perform their respective functions

19   without harassment or intimidation"). Absolute immunity is thus necessary here to protect the

20   Attorney General and staff from "harassing litigation that would divert [their] time and attention

21   from [their] official duties" and to "enabl[e them] to exercise independent judgment when

22   'deciding which suits to bring and in conducting them in court.'" *Kalina v. Fletcher*,

23   522 U.S. 118, 125 (1997) (citation omitted).

24

25

26

**2.      Qualified immunity also bars SAF's claims for damages under § 1983, and SAF's failure under the first prong requires dismissal of their claims for injunctive and declaratory relief**

SAF has failed to plead any facts that would allow their individual-capacity damages claims to proceed in the face of qualified immunity. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, a government official is immune from a damages suit unless the plaintiff demonstrates: (1) "a violation of a constitutional right," and (2) that the right "was 'clearly established' at the time of [the] defendant's alleged misconduct." *Id.* at 232 (citation omitted). Here, SAF's Complaint fails both prongs.

**a.      The Complaint does not plead a constitutional violation**

SAF fails to allege any facts showing how the AGO's investigation into potential violations of state law constitutes viewpoint discrimination, retaliation, or an unreasonable search in violation of the U.S. Constitution. These failures require dismissal not only of SAF's damages claims, but of their § 1983 claims in their entirety.

**(1)      Viewpoint discrimination**

"Viewpoint discrimination occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (quotation omitted). To state a claim, a plaintiff must present facts showing that the government suppressed a plaintiff's speech "because of" the plaintiff's ideology, opinion, or perspective. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). A "bald allegation of impermissible motive" is insufficient; instead, plaintiffs must plead non-conclusory facts that allege it is "plausible, not merely possible" that the government engaged in viewpoint discrimination. *Moss*, 572 F.3d at 970.

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Here, SAF's viewpoint discrimination claim rests solely on their assertion that they are
2   aware of "no known action, investigatory or otherwise, against the Alliance for Gun
3   Responsibility, Grandmothers Against Gun Violence, Ceasefire, or any other other anti-gun
4   group." Compl. ¶ 51. While disparate treatment could be used to establish discriminatory motive
5   in some circumstances, *see Moss*, 572 F.3d at 971, SAF does not allege any of these "anti-gun
6   group[s]" engaged in conduct warranting an investigation by the AGO. *See, e.g.*, *Wood v. Moss*,
7   572 U.S. 744, 762 (2014) (rejecting viewpoint discrimination claim where pro-Bush and anti-
8   Bush demonstrators were treated differently because their respective locations posed different
9   security risks to the President). Thus, these "anti-gun groups" are not similarly situated.

10   None of the cases SAF cites in its Complaint save its viewpoint discrimination claim.
11   Two plainly involved the government treating similarly situated parties differently. *See Hoye v.*
12   *City of Oakland*, 653 F.3d 835 (9th Cir. 2011) (ordinance regarding conduct of individuals
13   outside abortion clinics enforced differently between those facilitating access and those
14   discouraging access); *Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) (ordinance
15   limiting the picketing, leafletting and displaying of signs contained content-based exemptions,
16   rendering it unconstitutional). The remaining cases included specific factual allegations raising
17   plausible inferences that the government engaged in viewpoint discrimination. *See, e.g.*, *Ariz.*
18   *Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 870 (9th Cir. 2016) (government officials
19   "publicly acknowledged" that its suspension of a student group's fees "resulted from [the student
20   group's] advocacy in support of [a ballot initiative.]"); *Menotti v. City of Seattle*, 409 F.3d 1113,
21   1148 (9th Cir. 2005) (police officers required people to remove anti-World Trade Organization
22   buttons or stickers to enter restricted zone in downtown Seattle); *White v. Lee*, 227 F.3d 1214
23   (9th Cir. 2000) (government investigators explicitly requested neighbors who were opposed to a
24   housing development to cease engaging in such speech).

25   In contrast, SAF identifies no similarly situated entity and alleges no facts plausibly
26   demonstrating that AG Ferguson and AAG Studor issued CIDs "because of" Plaintiffs' Second

Amendment views (as opposed to their belief that there were potential CSA or CPA violations). *See Moss*, 572 F.3d at 971–72. SAF's viewpoint discrimination claim should be dismissed.

### (2)        First Amendment retaliation

"To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n* , 824 F.3d at 867 (citations omitted).

Here, SAF identifies their constitutionally protected activity of filing lawsuits. *See* Compl. ¶ 24 (listing cases), ¶ 54. But SAF fails to plead facts from which the Court could infer that they have been chilled from engaging in this protected activity. Far from it, SAF has continued to file Second Amendment-related litigation against the AGO, including a challenge to Washington's "assault weapon" ban this spring. *See Hartford v. Ferguson*, No. 3:23-cv-05364-RJB, --- F. Supp. 3d ---, 2023 WL 3836230 (W.D. Wash. June 6, 2023) (filed Apr. 25, 2023); *Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE, --- F. Supp. 3d ---, 2022 WL 13969427 (W.D. Wash. Oct. 24, 2022) (filed one month after issuance of CID to SAF). Nor would the issuance of a CID chill a person of ordinary firmness, given a CID recipient's ability to seek judicial review of the CID and have it set aside if it was wrongfully issued. *See* RCW 19.86.110(8)–(9). This is fatal.

Further, SAF does not allege facts establishing "a nexus" between the issuance of the CIDs and SAF's filing of lawsuits. Given the "presumption that a prosecutor has legitimate grounds for the action he takes," *Hartman v. Moore*, 547 U.S. 250, 263 (2006), and the "obvious alternative explanation" for the AGO's investigation, *Iqbal*, 556 U.S. at 682—i.e., the AGO has reason to believe SAF may have violated the CSA and CPA as stated in its CIDs

1   (*see* Compl. ¶ 31 and Fraas Decl. Ex. A)—SAF's self-serving and conclusory assertion that they

2   are not aware of "evidence of any legitimate reason for the investigation" fails to state a claim.

3   Compl. ¶ 59; *see Iqbal*, 556 U.S. at 682 (finding "the purposeful, invidious discrimination

4   respondent asks us to infer" was "not a plausible conclusion").

5              **(3)    Unreasonable search**

6              It is well settled that a CID comports with the Fourth Amendment where: (1) "the inquiry

7   is within the authority of the agency," (2) "the demand is not too indefinite," and (3) "the

8   information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652

9   (1950); *see also Steele v. Washington ex rel. Gorton*, 537 P.2d 782, 788 (Wash. 1975) (en banc).

10  SAF's Complaint does not allege that any CID failed to meet these legal requirements, but

11  instead relies on the baseless assertion that the AGO's investigation is "an aimless fishing

12  excursion, conducted without a clear objective other than harassment." Compl. ¶ 64. SAF's

13  conclusory allegations fail to state a claim under the Fourth Amendment.

14             *First*, the AGO's statutory authority to issue the CID is plain. *See* RCW 19.86.110(1).

15  The Attorney General is not required to allege or prove a CPA violation when issuing a CID. *Id.*

16  Nor does a "probable cause" standard apply. *See Steele*, 537 P.2d at 788–89.[9]

17             *Second*, a CID is not impermissibly indefinite where there is "no general or

18  undis-criminating request for all business records" and the types of records sought are "explained

19  with reasonable clarity." *Id.* at 788. SAF does not allege that any CIDs were impermissibly

20  indefinite.

21             *Third*, SAF has not plausibly alleged that the records the CIDs sought were not

22  "reasonably relevant to the investigation of unfair and deceptive practices[.]" *Id.* [T]he agency's

23

24  [9] SAF cites *State v. Miles*, 156 P.3d 864 (Wash. 2007), in support of its Fourth Amendment claim. Compl.
¶ 61. But *Miles* "involve[d] the interpretation of article I, section 7 of the Washington Constitution," not the Fourth
25  Amendment. *Id.* at 866. And it concerned a subpoena for a private individual's banking records, not a CID to a
"corporation" that "can claim no equality with individuals in the enjoyment of a right to privacy." *Morton Salt*,
26  338 U.S. at 652. Moreover, SAF cites the concurrence, not the controlling opinion. *Miles*, 156 P.3d at 872.

1  appraisal of relevancy, . . . 'must be accepted so long as it is not obviously wrong.'" *In re*
2  *McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (quoting *Resol. Tr. Corp. v. Walde*, 18 F.3d 943,
3  946 (D.C. Cir. 1994)). SAF does not allege that any records sought were irrelevant to an
4  investigation into its financial and governance affairs. *See* Compl. ¶ 32.

5      Rather, SAF takes the extraordinary position that *any* documents were irrelevant because
6  the AGO's investigation is illegitimate. Compl. ¶ 64. To be sure, "[i]n *extraordinary*
7  *circumstance*s, a court . . . may inquire into allegations that an agency is using an administrative
8  subpoena for an improper purpose." *Consumer Fin. Prot. Bureau v. Accrediting Council for*
9  *Indep. Colleges & Schs.*, 854 F.3d 683, 689 (D.C. Cir. 2017) (emphasis added). But a party
10 asking "a court [to] inquire into . . . allegations of bad faith or harassment" must "present . . .
11 *specific evidence* of improper intent." *FDIC v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997)
12 (quoting *Resol. Tr. Corp. v. Frates*, 61 F.3d 962, 965 (D.C. Cir. 1995)) (emphasis added; cleaned
13 up). And "district courts must be cautious in granting such discovery rights, lest they transform
14 subpoena enforcement proceedings into exhaustive inquisitions into the practices of the
15 regulatory agencies." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1388 (D.C.
16 Cir. 1980) (en banc).

17     Here, SAF's conclusory assertions of bias and self-serving protestations of innocence do
18 not meet the high bar for "specific evidence of improper intent." SAF's unsupported grievances
19 cannot nullify the Attorney General's undoubted authority to ensure SAF's compliance with
20 Washington law. Many investigation targets doubtlessly feel the same way SAF does; if SAF's
21 grievances were enough to shut down an investigation, the AGO's authority to investigate would
22 be illusory.

23     *Finally*, consistent with the Fourth Amendment, CIDs may only be enforced by court
24 order. RCW 19.86.110(9); *see also Patel v. City of Los Angeles*, 738 F.3d 1058, 1063 (9th Cir.
25 2013) (noting that the Fourth Amendment requires that "[t]he party subject to the demand must
26 be afforded an opportunity to 'obtain judicial review of the reasonableness of the demand prior

1   to suffering penalties for refusing to comply'" (quoting *See v. City of Seattle*, 387 U.S. 541, 545
2   (1967))), *aff'd City of Los Angeles v. Patel*, 567 U.S. 409, 428 (2015). This means a corporation
3   cannot be required to provide records absent a judicial determination. *See* RCW 19.86.110(9).
4   In addition, as the Washington Supreme Court has explained, if a party believes "the Attorney
5   General [has] arbitrarily serve[d] a civil investigative demand upon a business" there is a
6   remedy: "the supplicant is authorized by RCW 19.86.110(7) to petition the appropriate superior
7   court and, upon a showing of good cause, the investigative demand may be set aside." *Steele*,
8   537 P.2d at 788–89.

9       Here, SAF has failed to avail themselves of Washington's robust procedural protections.
10  *See id.*; RCW 19.86.110(8)–(9). Having slept on their rights, they have no grounds for now
11  asserting a constitutional violation. Because SAF has identified no facial shortcomings of the
12  CIDs and pursued none of the judicial protections available to them under state law, they fail to
13  state a claim for a Fourth Amendment violation.

14      SAF's § 1983 claims fail in their entirety.

15      **b.    There was no violation of clearly established law**

16      Even if SAF could link AG Ferguson's or AAG Studor's conduct to a constitutional
17  violation with the required specificity (and they cannot), the individual defendants would still be
18  entitled to qualified immunity because they did not violate clearly established law. *See Felarca*
19  *v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018) (to determine whether a right was clearly
20  established, the court is to determine whether the law was "clear enough that *every* reasonable
21  official would know he or she was violating the plaintiff's rights.") (cleaned up). A right is only
22  "clearly established" when, at the time of the act, it was previously set forth by either "controlling
23  authority" or a "robust consensus of cases of persuasive authority." *Ashcroft v. al-Kidd*,
24  563 U.S. 731, 741–42 (2011) (citation omitted).

25      Here, the AGO has authority to investigate whether charitable entities comply with
26  applicable state requirements and to issue CIDs in aid of that investigation. *See supra* pp. 3–4.

DEFENDANTS' MOTION TO DISMISS                    20              ATTORNEY GENERAL OF WASHINGTON
NO. 2:23-CV-01554-TSZ                                                    Complex Litigation Division
                                                                        800 Fifth Avenue, Suite 2000
                                                                        Seattle, WA  98104-3188
                                                                        (206) 464-7744

The AGO is also afforded latitude in "embarking upon investigations without absolute assurances that violations of the [CPA] have occurred." *Steele*, 537 P.2d at 789. There is no "clearly established law" holding that a government agency's service of non-self-executing CIDs that are subject to judicial oversight is itself unlawful viewpoint discrimination, retaliation, or an unreasonable search in violation of the Constitution. To the contrary, such procedures are widely accepted as the most effective and fair manner in which to gather the information necessary, from an adverse party, to investigate and prepare a case.

Likewise, there is no "clearly established law" that government agencies are required to preview investigative findings, legal theories, or factual allegations before deciding to file an enforcement action. The alleged conduct here—issuing CIDs that are subject to judicial challenge and declining to disclose the AGO's legal theories to an investigation's target—do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citation omitted). SAF cannot establish that AG Ferguson and AAG Studor violated clearly established law. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). Accordingly, the § 1983 personal capacity claims should be dismissed with prejudice.

**D.      SAF's State Law Claims Should Be Dismissed (Counts IV–V)**

     **1.      SAF's abuse of process must be dismissed on the merits**

SAF's abuse of process claim fails as a matter of law because the tort does not apply to pre-suit investigations. Under Washington law, "[a]buse of process is the misuse or misapplication of the process, *after the initiation of the legal proceeding*, for an end other than that which the process was designed to accomplish." *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1231–32 (W.D. Wash. 2015) (quoting *Saldivar v. Momah*, 186 P.3d 1117, 1130 (Wash. Ct. App. 2008)) (emphasis added). "[T]he crucial inquiry is whether *the judicial system's process* . . . has been misused to achieve another, inappropriate end." *Sea-Pac Co. v. United Food & Com. Workers Local Union 44*, 699 P.2d 217, 220 (Wash. 1985) (quotation omitted;

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

emphasis added). "The gist of the action is the misuse or misapplication of the process, *after it has once been issued,* for an end other than that which it was designed to accomplish." *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 82 P.3d 1199, 1217 (Wash. Ct. App. 2004) (emphasis added). Put another way, "there must be an act *after filing suit using legal process empowered by that suit* to accomplish an end not within the purview of the suit." *Sea-Pac*, 699 P.2d at 220 (citation omitted). This limitation is fatal to SAF's claim: a party "cannot bring an abuse of process claim for acts that occurred before the legal proceedings against him were initiated." *Vargas Ramirez*, 93 F. Supp. 3d at 1233; *see also Sea-Pac*, 699 P.2d at 221 (dismissing abuse of process claim based on union's filing with National Labor Relations Board: "[N]o process issued in Washington courts, therefore there is no abuse of process").

Alternatively, SAF's claims fail because they have not plausibly alleged "the existence of an ulterior purpose to accomplish an object not within the proper scope of the process." *Vargas Ramirez*, 93 F. Supp. 3d at 1232. While SAF alleges that the issuance of CIDs was "motivated by . . . ulterior purpose[s]" and to "chill the activities of SAF . . . or force them out of business," Compl. ¶ 68, they allege no *facts* to support these conclusions. *See Iqbal*, 556 U.S. at 678 (requiring the plaintiff to plead "factual content" that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; "mere conclusory statements" do not suffice).

Finally, even if CIDs were *judicial* process, SAF does not allege facts showing AG Ferguson and/or AAG Studor "misused" that process. *Sea-Pac*, 699 P.2d at 220. Rather, their allegations demonstrate that AAG Studor used CIDs exactly as they were meant to be used, to collect evidence relating to SAF's business activities. The mere fact that SAF disagrees with the premise of the AGO's investigation, or characterizes a CID deposition as "meandering," Compl. ¶ 38, is insufficient.

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

**2.     SAF's PRA Claim is Premature**

"[A] requester may only initiate a lawsuit to compel compliance with the PRA after the agency has engaged in some final action denying access to a record." *Hobbs v. State*, 335 P.3d 1004, 1008 (Wash. Ct. App. 2014). A final agency response, therefore, is "a prerequisite for filing an action for judicial review of an agency decision under the PRA." *Id.* at 1009. SAF's PRA claim must be dismissed as premature. The AGO is continuing to produce records responsive to its request.

In *Hobbs*, the requester filed a lawsuit alleging PRA violations while their public records request was still open and the agency continued to produce records. The Washington Court of Appeals rejected the plaintiff's position that "a requester is permitted to initiate a lawsuit prior to an agency's denial and closure of a public records request," explaining that "[t]he PRA allows no such thing." *Id.* at 1008. Instead, "based on the plain language of the PRA," "before a requester initiates a PRA lawsuit against an agency, there must be some agency action, or inaction, indicating that the agency will not be providing responsive records." *Id.* at 1009. No such action has occurred here.

As SAF acknowledges, the AGO has and continues to provide responsive records on an installment basis. *See* Compl. ¶ 36 (describing multiple productions of responsive records by the AGO, including a production as recent as September 7, 2023 and acknowledging that "another batch would be arriving later in the month"). SAF's lawsuit is premature and should be dismissed. *See, e.g.*, *West v. Port of Tacoma*, 199 Wash. App. 1035 (June 20, 2017) (unpublished) (dismissing public records lawsuit as premature when the agency maintained active communication with requester and was continuing to produce multiple installments of records at the time the lawsuit was filed); *Strahm v. Snohomish County*, 8 Wash. App. 2d 1061 (May 6, 2019) (unpublished) (dismissing lawsuit as prematurely filed when the county had not yet closed the requests at the time the requester filed the lawsuit); *Northup v. Dep't of Corrs.*, 188 Wash. App. 1039 (July 6, 2015) (unpublished) (holding that lawsuit challenging agency

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

redactions was premature because the request was not closed and the agency continued to produce records).

**E.    The Court Should Award the State Attorney Fees**

42 U.S.C. § 1988(b) authorizes the Court to award the prevailing party in a § 1983 action its attorney fees and costs where the action is "unreasonable, frivolous, meritless, or vexatious." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (citation omitted). An action is frivolous when the result is obvious or the claims are wholly without merit. *Id.* Because SAF's claims are wholly without merit, the State respectfully requests its reasonable attorney fees and costs.

## IV.    CONCLUSION

The Court should grant the AGO's motion to dismiss and award the State its fees for having to defend this action.

DATED this 18th day of October 2023.

ROBERT W. FERGUSON
Attorney General

*s/ Lauryn K. Fraas*
LAURYN K. FRAAS, WSBA #53238
ALEXIA DIORIO, WSBA #57280
Assistant Attorneys General
MARSHA CHIEN, WSBA #47020
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Lauryn.Fraas@atg.wa.gov
Alexia.Diorio@atg.wa.gov
Marsha.Chien@atg.wa.gov

*Attorneys for Defendants Robert Ferguson,*
*Joshua Studor, and the Attorney General's Office*
*for the State of Washington*

I certify that this memorandum contains 8,305 words, in compliance with the Local Civil Rules.

DEFENDANTS' MOTION TO DISMISS
NO. 2:23-CV-01554-TSZ

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744