THE HONORABLE MARSHA J. PECHMAN

1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9

THE SECOND AMENDMENT
FOUNDATION; THE CITIZENS
COMMITTEE FOR THE RIGHT TO KEEP
AND BEAR ARMS; LIBERTY PARK
PRESS; MERRIL MAIL MARKETING;
CENTER FOR THE DEFENSE OF FREE
ENTERPRISE; SERVICE BUREAU
ASSOCIATION; and ALAN GOTTLIEB,

Plaintiffs,

v.

ROBERT FERGUSON, individually and in his
official capacity as Washington Attorney
General; JOSHUA STUDOR, individually and
in his official capacity as Washington Assistant
Attorney General, Consumer Protection
Division; THE ATTORNEY GENERAL'S
OFFICE FOR THE STATE OF
WASHINGTON; and JOHN DOES 1-10,

Defendants.

**NO. 2:23-cv-01554-MJP**

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR A
MORE DEFINITE STATEMENT**

**NOTED ON MOTION CALENDAR:**

**NOVEMBER 17, 2023**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 1

## I. INTRODUCTION

The Second Amendment Foundation ("SAF") and Mr. Gottlieb[1] filed their claims in federal court because Defendants are violating their constitutional rights. Defendants filed a motion arguing that a *federal* court was not permitted to interfere with a *state* government investigation and must abstain from hearing the case. Although precedent is clear that Defendants are not shielded from federal court oversight, SAF and Mr. Gottlieb decided not to fight a procedural battle, dismissed the case, and refiled in state court. Defendants then removed the matter back to the federal court they argued could not hear the case. Defendants' current motion effectively seeks remand back to state court. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) (remedy for the standing defect Defendants allege is remand).

Defendants' zig-zagging fits a pattern. The investigation that precipitated this suit was designed to divert the time and money of the Attorney General's ("AG's") political enemies from First Amendment activity without ever requiring the AG to present a case on the merits. While Defendants may claim Plaintiffs' constitutional objections are frivolous, they are fully aware that their behavior is unconstitutional. The AG was recently ordered to pay over $4 million in attorneys' fees for subjecting a business to an unjustified investigation like this one. *State v. TVI, Inc. d/b/a Value Village* ("*Value Village*"), No. 17-2-32886-3 (King. Cnty. Sup. Ct.), Dkt. 361. Like here, the AG "denigrated" the target's First Amendment objections and forced it to engage in convoluted litigation, even "continually request[ing] reconsideration of rulings, despite unanimous opinions rejecting [the AG's] arguments and holding that [their] actions violated established First Amendment principles." *Value Village*, Dkt. 352 at 9, 18. Defendants have singled out SAF and Mr. Gottlieb for the same type of treatment because of hostility to their protected speech and political beliefs.

---

[1] References to SAF and Mr. Gottlieb include all Plaintiffs unless the text or context indicate otherwise.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 2

Defendants' motion also distorts applicable law and the facts.  For example, Defendants suggest that SAF and Mr. Gottlieb impulsively filed a lawsuit rather than employing state law channels for challenging Civil Investigation Demands ("CIDs").  But state law provides *twenty days* from issuance to challenge a CID, after which a recipient is defaulted from doing so (according to Defendants).  Dkt. 8 at 2 (citing RCW 19.86.110(8)).  Here, it was *over a year* after the CIDs were served that public records and Defendants' conduct revealed there was no basis for the investigation. Similarly, Defendants claim that SAF and Mr. Gottlieb are alleging they are being targeted based solely on the AG's history of opposing gun rights.  *Id.* at 4.  But the Complaint alleges that retaliatory animus can be inferred from not just from the AG's history, but from the lack of consumer complaints against Plaintiffs, Defendants' deficient response to a Public Records Act ("PRA") request, and Defendants' series of different pretextual, easily debunked explanations for the investigation.  Defendants also repeatedly claim that SAF and Mr. Gottlieb allege only possible future injuries when, in fact, they have identified consummated, cognizable injuries, including financial losses and reduced First Amendment activity.  The Court should deny Defendants' motion.[2]  Alternatively, the Court should remand this case back to state court with an award to SAF of its costs and attorneys' fees incurred as a result of Defendants' bad-faith removal.  *See* 28 U.S.C. § 1447(c).

## II.    BACKGROUND

### A.    Factual and Procedural Background

Plaintiffs refer the Court to their Complaint for the facts that led Plaintiffs to sue. On May 3, 2023, Mr. Gottlieb and SAF sued Defendants in this court seeking damages and an injunction ordering Defendants to cease harassing them without any basis for suspecting unlawful activity.

---

[2] Alternatively, SAF and Mr. Gottlieb request leave to amend their complaint to address any deficiencies the court identifies, or at minimum that any dismissal be without prejudice to their right to reassert their claims should State Defendants petition to enforce their retaliatory CIDs.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 3

*Second Amendment Found. v. Ferguson*, No. 2:23-cv-00647-MJP (W.D. Wash. May 3, 2023) ("*SAF v. Ferguson 1*"), Dkt. 1.  Defendants moved to dismiss, arguing that the suit did not belong in federal court and this court must abstain from interfering with state proceedings.  *SAF v. Ferguson 1*, Dkt. 14.  These objections were meritless.[3]  But SAF and Mr. Gottlieb did not wish to spend time litigating over the forum, they voluntarily dismissed their complaint and refiled in state court.

Defendants then filed a notice of removal back to this court, rendering the process of dismissal and state court filing a waste of time and resources.  Dkt. 1.  As discussed below, Defendants' present motion is in effect a motion to re-remand to state court.  *See infra* § III.B.1.

## III.    ARGUMENT

### A.    There is No Adequate State Law Procedure Through Which SAF and Mr. Gottlieb Could Have Effectively Asserted their Claims

Defendants claim this Court must dismiss because SAF and Mr. Gottlieb "slept on their rights" and "failed to avail themselves of Washington's robust procedural protections."  Dkt. 8 at 20 (citing *Steele v. Washington ex rel. Gorton*, 537 P.2d 782, 788-89 (Wash. 1975) (en banc)). Defendants fault SAF and Mr. Gottlieb for failing to file a state court petition to set aside some (but not all) of the CIDs under RCW 19.86.110(8).  Relatedly, they argue that CIDs are "non-self-executing" and are "subject to judicial oversight," because Defendants can petition a Washington court to compel SAF and Mr. Gottlieb's compliance.  *Id.* at 21.  None of these are valid reasons for this Court to dismiss this case.

SAF and Mr. Gottlieb's claims are based in significant part on harms caused by *third-party* CIDs falsely claiming SAF and Mr. Gottlieb were suspected of illegal conduct and had caused the

---

[3] Federal jurisdictional requirements had been met, and *Younger* abstention does not apply when state proceedings are instituted in bad faith for the purpose of harassment, *see Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 4

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

AG's demands on those third parties.  Defendants do not contend RCW 19.86.110(8) allowed SAF and Mr. Gottlieb to petition to set aside those CIDs.  And those CIDs were served with *gag orders* preventing SAF and Mr. Gottlieb from knowing about them until after the twenty-day petition window had closed.  SAF and Mr. Gottlieb *still* do not know how many defamatory CIDs Defendants have served.

As for the CIDs to Plaintiffs, Defendants' arguments are contradictory and ignore the facts. They claim the CIDs were facially valid (Dkt. 8 at 18-20) and prosecutors are presumed to have legitimate grounds for their actions.  *Id.* at 17.  Yet Defendants fault SAF and Mr. Gottlieb for not *immediately* assuming Defendants were acting in bad faith and filing a petition to set the CIDs aside as facially invalid.  It was the accretion of evidence over time—including the failure to respond to the PRA request, the lack of complaints in the AG's records, the AG's string of pretextual explanations for the investigation, and the aimless but time-intensive nature of the investigation—that revealed the investigation's improper purpose and lack of legitimate basis.  *Cf. Wallace v. Kato*, 549 U.S. 384, 388 (2007) (§ 1983 claim does not accrue until the plaintiff has "a complete and present cause of action").  And Defendants *themselves* have long argued that a CID recipient who does not bring a petition within twenty days is procedurally defaulted from raising any defense if Defendants later petition to enforce the CID.  *See, e.g.*, Respondents Br. at 30-33, *Brelvis Consulting, LLC v. Washington*, No. 50235-6 (Wash. Ct. App. Oct. 23, 2017) (brief from Mr. Ferguson's office: "a party … must respond or object within the statutory time period, or else the party has waived its right to object.").  At least one trial court has agreed.  *Brelvis*, 436 P.3d at 828 (noting trial court ruled defenses were procedurally defaulted).[4]

---

[4] Resisting in a CID enforcement proceeding also would not provide SAF and Mr. Gottlieb with any remedy for the damages they have suffered from Defendants' constitutional violations.  Their best hope would be a retroactive attorney fee award as in *Value Village* if Defendant pursue a baseless lawsuit.  Even then, Plaintiffs would not receive reputational, emotional, and operational damages.  If a remedy can only follow a baseless lawsuit, officials could freely violate the constitution by continuing a retaliatory investigation without ever bringing charges.

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

SAF and Mr. Gottlieb have never had a meaningful opportunity other than this proceeding to present their claims, nor will they if this Court adopts Defendants' faulty arguments. Due process and fundamental fairness require that SAF and Mr. Gottlieb have *some* opportunity to vindicate their constitutional rights after learning they were violated. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Defendants' arguments would foreclose that opportunity, and they have alarming implications when taken to their logical conclusion.[5]

**B.     Defendants' Arguments Regarding Ripeness are Not Only Wrong, but Imply that Defendants' Removal to this Court was Frivolous.**

**1. A Case May not be Dismissed as Unripe After Removal from State Court.**

Under 28 U.S.C. § 1441, "[a]n action filed in state court may be removed only if the district court could have exercised jurisdiction over the action if originally filed there." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996). A federal court cannot have subject matter jurisdiction unless a case is ripe, and removal of an unripe case is improper. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). "If … before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." *Polo*, 833 F.3d at 1196 (quoting 28 U.S.C. § 1447(c)), see also *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997)( "Section 1447(c) is mandatory.").

Defendants are wrong that SAF and Mr. Gottlieb's claims are unripe. Defendants' arguments, however, necessarily indicate that *they themselves* do not believe this court has subject matter jurisdiction, meaning they consider their own notice of removal frivolous. *Contra* Fed. R. Civ. P. 11(b). Should the Court adopt Defendants' jurisdictional arguments, it should award SAF and Mr. Gottlieb their costs and attorneys' fees associated with removal. *See Martin v. Franklin*

---

[5] Under Defendants' reasoning, if twenty days pass without a challenge to a CID, the AG could *openly admit* that the investigation never had any basis other than to suppress disfavored political speech and the target would be without recourse.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 6

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Capital Corp.*, 546 U.S. 132, 140-41 (2005) ("removing a case to federal court and then having it remanded back to state court delays resolution [], imposes additional costs on both parties, and wastes judicial resources" so courts should "award attorney's fees under § 1447(c)… where the removing party lacked an objectively reasonable basis for seeking removal"); *A Forever Recovery, Inc. v. Twp. of Pennfield*, 606 Fed. App'x. 279, 280 (6th Cir. 2015) (upholding fee award when government defendant "removed in bad faith to delay litigation because it was aware that the federal claims were unripe at the time of removal").

Similar considerations apply when a state official removes a case to federal court only to then *immediately* claim that federal court should abstain from hearing the matter out of discretionary prudence. Prudential ripeness is not jurisdictional, and the Court has "discretion to proceed to the merits or deem such an argument waived or forfeited." *River N. Properties, LLC v. City & Cnty. of Denver*, 13-CV-01410-CMA-CBS, 2014 WL 1247813, at *3 (D. Colo. Mar. 26, 2014). Defendants cite no cases indicating that the state court in which this case was filed would apply the same prudential ripeness analysis that they claim applies in federal court. It therefore constitutes improper "procedural gamesmanship" for Defendants to remove the case from a court where it could have been adjudicated on the merits to a federal court they claim should decline to hear the case out of judicial restraint. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 546-47 (4th Cir. 2013).

Removal waives objections to prudential ripeness because it is inconsistent for a state official to "invoke federal jurisdiction" then tell the federal court it should decline the case. *See River N. Properties*, 2014 WL 1247813, at *3 ("[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation… in a federal forum."); *Sansotta*, 724 F.3d at 544; *ELH LLC v. Westland Irrigation Dist.*, 2:16-CV-1318-SI, 2017 WL 1055960, at *3 (D. Or. Mar. 20, 2017). The rationale for the rule is straightforward—it is unfair for an official to "manipulat[e] litigation" by removing and then

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 7

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

denying that the case should proceed in federal court "thereby denying a plaintiff any forum for having his claim heard." *Sansotta*, 724 F.3d at 546–47. This Court should deem Defendants' objections to prudential ripeness waived by their removal.

### 2. SAF and Mr. Gottlieb's Claims are Constitutionally Ripe

Defendants argue SAF and Mr. Gottlieb have not suffered any concrete injury because they "make[] no concrete allegation that the AGO's investigation has *actually* chilled SAF's speech." Dkt. 8 at 5-8. First, Defendants are wrong. SAF and several of the other plaintiffs are advocacy organizations whose business *is* constitutionally protected political expression. Compl. ¶ 2. Defendants' actions have forced Plaintiffs to spend over $100,000 in legal fees and hundreds of labor hours responding to the investigation. *Id.* ¶ 32. These are resources that otherwise would have gone to protected First Amendment activity; because they went to responding to Defendants' harassment, the amount of protected expression Plaintiffs have engaged in and can engage in is *necessarily* reduced. *Cf. Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002) (organization can establish standing from "a diversion of its resources and a frustration of its mission"). Thus Mr. Gottlieb and SAF *have* alleged Defendants' conduct *actually* chilled their speech.

Defendants rely heavily on *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022), in which a panel of the Ninth Circuit held that Twitter's "naked assertion" that its speech had been chilled by a retaliatory Texas CID was insufficient injury, but that case is distinguishable. Twitter is a for-profit corporation. Unlike SAF, Twitter's constitutionally protected expression was not *necessarily* chilled when resources were diverted from its normal business.

Moreover, Defendants wrongly assume that "self-censorship" is the only "constitutionally-recognized" injury that can support standing. *Wolfson v. Brammer*, 616 F.3d

**Corr Cronin LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1045, 1060 (9th Cir. 2010).[6]  In many cases, "the injury… inheres in the retaliatory conduct itself." *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994).  In other words, when a government official subjects a citizen for negative treatment because of protected conduct, the constitutional injury is the harm from the negative treatment, regardless of whether it ultimately chills subsequent speech. *See Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) ("Chilling is required to be alleged only in cases where a plaintiff states no harm independent of the chilling of speech."); *Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 830 (9th Cir. 2003).

Here, SAF and Mr. Gottlieb have alleged constitutionally cognizable injuries independent of the chilling of their speech.  Defamatory third-party CIDs and gag orders sent to business associates damaged Plaintiffs' reputation and disrupted their operations.[7]  Compl. ¶ 30. Defendants' actions intruded upon their seclusion, and the CIDs forced them to disclose private information. *Id.* ¶¶ 43, 60-61.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021)("reputational harms, disclosure of private information, and intrusion upon seclusion" are fully ripe injuries" that support standing).  Defendants' actions also caused them financial and operational injuries. *Id.* ¶¶ 32, 58.  Defendants also caused Mr. Gottlieb and his family great stress and emotional damage and placed considerable strain on Mr. Gottlieb's health. *Id.* ¶¶ 45 n.17, 58. All of these are plainly concrete injuries that *already occurred*.

---

[6] Courts "appl[y] the requirements of ripeness and standing less stringently in the context of First Amendment claims" and generally "one need not await consummation of threatened injury" before bringing suit. *Wolfson*, 616 F.3d at 1058.  In pre-enforcement actions implicating First Amendment rights, "the inquiry tilts dramatically toward a finding" of injury because of the risks to freedom of expression. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000).

[7] Defendants' attempt to dismiss these harms as "speculative" relies on falsely claiming that SAF and Mr. Gottlieb are claiming only that vendors "may cease to do business with them" in the future. Dkt. 8 at 8.  This is a mischaracterization.  SAF and Mr. Gottlieb allege that "[t]he CIDs and gag orders have themselves, as designed, severely damaged plaintiffs' reputations and ability to work with the third-party CID recipients" *already*.  Compl. ¶ 30. The third-parties *currently* believe SAF and Mr. Gottlieb are suspected of unlawful activity, and the CIDs *already* disrupted SAF's relationships, including by causing accountants to break off contact in the middle of an audit. *Id.* ¶ 28.  These injuries support standing. *Meese v. Keene*, 481 U.S. 465, 473 (1987) (threatened reputational harms are sufficient).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 9

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Defendants again rely on *Twitter* to argue that some (but not all) of SAF and Mr. Gottlieb's injuries are "self-inflicted" because "SAF could have moved to set aside the CID rather than respond."[8] Dkt. 8 at 8. This contention is nonsensical on multiple fronts. The stress and health effects Mr. Gottlieb and his family experienced were from Defendants serving and pursuing the CIDs over months—not their attempts to comply with them. Any effort to set aside the CIDs would have *also* cost legal fees, hours, and stress. *Cf. La Asociacion de Trabajadores*, 624 F.3d at 1088 (standing exists where plaintiff "would have suffered some other injury if it had not diverted resources to counteracting the problem"). And the improper purpose of the CIDs came into focus *after* RCW 19.86.110(8)'s twenty-day window, meaning the lack of a petition to set aside the CIDs was a result of Defendants' concealment of their improper motives, not Plaintiffs waiving their rights.

### 3.  SAF and Mr. Gottlieb's Claims are Prudentially Ripe

Defendants cite a number of cases concerning routine pre-enforcement challenges to administrative subpoenas. Dkt. 8 at 9. None of these cases address the situation at issue here: an investigation was *initiated* for an unconstitutional, retaliatory purpose, where no other avenue exists to challenge Defendants' unconstitutional conduct.[9]

The prudential standing inquiry asks whether "further factual development would significantly advance [a court's] ability to deal with the legal issues presented." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737 (1998). Courts consider two factors in determining whether a case satisfies prudential requirements for ripeness: "the fitness of the issues for judicial decision," and "the hardship to the parties of withholding court consideration." *Yahoo! Inc. v. La*

---

[8] Defendants do not cite the *Twitter* panel's actual reasoning, which was that "[i]f [Texas] moves to enforce the CID, Twitter can raise its First Amendment defense then." 56 F. 4th at 1177. Defendants' long-held position is that SAF and Mr. Gottlieb *cannot* raise any defense if Defendants move to enforce the CIDs. *See supra* III.A. Defendants thus view enforcement as exactly the "rubber stamp" proceeding *Twitter* distinguished. 56 F. 4th at 1176.

[9] SAF and Mr. Gottlieb expressly reserve for appeal all arguments that prudential ripeness is no longer a valid doctrine and should be abandoned.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 10

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1211 (9th Cir. 2006) (en banc).  Both factors weigh in favor of adjudicating SAF's claims.

First, whether a dispute is fit for judicial consideration depends on the "state of the factual record" and the "substantive legal question to be decided." *Yahoo!*, 433 F.3d at 1206. All of SAF and Mr. Gottlieb's claims are based on acts that have *already* occurred, thereby presenting a "concrete factual situation" ripe for adjudication now.  *Alaska Right to Life PAC v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007).  Defendants are incorrect that SAF and Mr. Gottlieb are challenging a non-final action and "any claim that the AGO's investigation is 'baseless' requires the completion of that investigation." Dkt. 8 at 10.  SAF's and Mr. Gottlieb's claims turn on the reason the investigation was *initiated* and pursued. *See Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 869 (9th Cir. 2016).  Even if Defendants were to uncover some evidence of unlawful activity in 2024 or beyond, it would not retroactively cure their unconstitutional motives in 2021-2023.

Second, the hardship SAF and Mr. Gottlieb will endure if this court withholds adjudication is plain.  Defendants' position is that SAF and Mr. Gottlieb *cannot assert* constitutional objections if Defendants move to enforce the CIDs.  *Supra* § III.A.  Nor would such a proceeding offer any remedy for the harm SAF and Mr. Gottlieb have suffered, including from the third-party CIDs.  Defendants also assert SAF and Mr. Gottlieb can raise their constitutional objections as a defense if Defendants ever decide to bring a lawsuit.  But the alleged facts are that Defendants' investigation is intended to harass without Defendants needing to bring a lawsuit where they would be required to put on proof.  If Defendants were correct, they could harass a target indefinitely, never bringing charges, and the target would be without recourse no matter how blatant the unconstitutional motive.  That is not the law.  *See White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (retaliatory investigation without charges still violates the target's First Amendment rights).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 11

**C.**  **The AG is not Immune from Suit for Unconstitutionally Targeting and Harassing Groups with whom He Disagrees**

**1.  There is no Absolute Immunity for Investigatory Abuses**

**a.  Defendants Have the Burden to Establish Absolute Immunity**

"Title 42 U.S.C. § 1983 is written in broad terms. It purports to subject every person acting under color of state law to liability for depriving any other person in the United States of rights, privileges, or immunities secured by the Constitution and laws." *Burns v. Reed*, 500 U.S. 478, 484 (1991) (cleaned up). The Supreme Court has, however, recognized some immunities from suit that existed at common law.  *Id*.  Where immunity is appropriate, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials."  *Id*. at 486-487.  The Supreme Court has been "quite sparing in [its] recognition of absolute immunity and [has] refused to extend it any further than its justification would warrant."  *Id*. at 487 (cleaned up); *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)(absolute immunity is justified only where "any lesser degree of immunity could damage the judicial process itself.").

**b.  Absolute Immunity Attaches to Advocacy, not Investigation**

Whether immunity exists depends upon "the nature of the function performed, not the identity of the actor who performed it." *Kalina*, 522 U.S. at 127. A state official "seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns*, 500 U.S. at 487. The first step "in deciding whether officials performing a particular function are entitled to absolute immunity" is generally to "look[] for a historical or common-law basis for the immunity in question." *Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985). Defendants' motion does not suggest that a government official engaged in a civil investigation would have enjoyed immunity from suit at common law.

Advocacy and investigation are two distinct functions for purposes of absolute immunity. "A prosecutor engaged in certain investigative activities enjoys, not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman's."

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 12

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Advocacy includes "evaluating evidence and

2   interviewing witnesses" in preparation for trial, while investigation includes "searching for the

3   clues and corroboration that might give [] probable cause to recommend that a suspect be

4   arrested." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–74, 113 S. Ct. 2606, 2616, 125 L. Ed. 2d

5   209 (1993). When an attorney performs an investigative function, absolute immunity does *not*

6   apply. *Id*.

7         The reason for this dichotomy is that citizens who risk having their constitutional rights

8   violated by government officials are protected by a number of procedural safeguards in the judicial

9   process that do not exist in the investigative phase. *Butz v. Economou*, 438 U.S. 478, 512 (1978).

10  Those safeguards include: "the insulation of the judge from political influence, the importance of

11  precedent in resolving controversies, the adversary nature of the process, and the correctability of

12  error on appeal." *Id*.

13      **c.  Absolute Immunity is Not Appropriate**

14        Defendants started and pursued an investigation to divert the Plaintiffs' time and money

15  from disfavored political speech, to intimidate Plaintiffs, and to fish for any useful fact that might

16  turn up.  These actions are most akin to those of the detective or prosecutor who engages in

17  investigative work before there is probable cause to make an arrest.[10]  A prosecutor in that

18  circumstance "may not shield his investigative work with the aegis of absolute immunity merely

19  _____

20  [10] The cases State Defendants cite extended absolute immunity only to government attorneys engaged in *judicial processes*.  None of them provided immunity to a prosecutor "conducting investigative work themselves in order to

21  decide whether" legal proceedings should move forward. *Buckley*, 509 U.S. at 275.  Defendants particularly rely on *McCormick v. City of Lawrence*, 253 F.Supp.2d 1156 (D. Kansas 2003), which they characterize as a case featuring

22  "a complaint against Assistant Attorneys General in the Kansas Attorney General's Consumer Protection Division." Dkt. 8 at 13:9-10.  But the government activity McCormick complained of was *the filing of a lawsuit* and the lawsuit

23  specifically involved unauthorized practice of law—a distinction the *McCormick* Court expressly relied upon. *McCormick*, 25 F.Supp.2d at 1166 (collecting cases regarding unauthorized practice of law proceedings). Nothing in

24  the *McCormick* decision that extends absolute immunity to an AG's investigative functions or consumer protection generally.  Even in the attorney discipline context, "Supreme Court precedent [] grants only qualified immunity to

25  the investigative activities of prosecutors." *Stein v. Disciplinary Bd. Of Supreme Court of NM*, 520 F.3d 1183, 1193 (10th Cir. 2008).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 13

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1   because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively

2   described as 'preparation' for a possible trial; every prosecutor might then shield himself from

3   liability for any constitutional wrong against innocent citizens by ensuring that they go to trial."

4   *Buckley*, 509 U.S. at 276.  Defendants would have the Court grant them absolute immunity

5   because someday they may bring a lawsuit that they do not currently have a basis to bring.  If an

6   eventual lawsuit cannot retroactively imbue an investigation with absolute immunity, then the

7   mere possibility of such a lawsuit certainly cannot.

8        The defendants describe their investigative activity as "advocacy" and "indisputably

9   connected to the trial process."  Dkt. 8 at 13:25-14:2.  These conclusory remarks are not tethered

10   to any facts.  There is no lawsuit against SAF or Mr. Gottlieb.  Defendants did not have to engage

11   in any courtroom advocacy to initiate and pursue their investigation.  The fact that Plaintiffs could

12   have theoretically brought a petition to set aside the CIDs within twenty days of their issuance

13   does not change what actually happened.  The Defendants served CIDs that they claimed to be

14   legitimate.  Nearly a year went by during which Defendants harassed and injured SAF and Mr.

15   Gottlieb outside of any lawsuit or adversarial process, without the oversight of a judge, without

16   any opportunity for correction of errors on appeal, and without the public scrutiny of an open

17   court.  In short, Defendants' investigation had none of the procedural safeguards that support the

18   application of absolute immunity for state attorneys when they are acting as advocates rather than

19   investigators.  *Butz*, 438 U.S. at 512.

20        The Court should deny the Defendants' invitation to engage in an unprecedented extension

21   of absolute immunity.

22        **2.  Defendants are not Entitled to Qualified Immunity**

23        In search of qualified immunity Defendants deny or ignore the allegations in the

24   Complaint.  They would like the Court to take them at their word that they some unidentified basis

25   to suspect some unidentified unlawful activity prompted their investigation, not retaliatory

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 14

political animus.[11]  Accepting Defendants' position would require disregarding or assuming the falsity of numerous factual allegations in the Complaint. But the Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr.*, 768 F.3d at 945.  Although the Court is not required to assume the truth of "conclusory" assertions that amount to a "formulaic recitation of the elements" of a claim, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), it may not ignore all the other relevant factual allegations as Defendants request.

SAF and Mr. Gottlieb do not offer a "conclusory" assertion that Defendants were motivated by political malice and had no reasonable basis for their investigation.  They instead make a series of concrete factual allegations from which the only reasonable inference is that Defendants were motivated by political animus.  These specific allegations include the following: Defendants have made their personal disagreement and antipathy towards SAF and Mr. Gottlieb and their constitutionally protected advocacy clear through public statements, including explicit criticisms of their constitutionally-protected work.  Compl. ¶¶ 21-25.  They have openly allied themselves with the advocacy groups who are SAF and Mr. Gottlieb's counterparts on the other side of the political divide.  *Id.* ¶ 51.  Defendants instituted a consumer protection investigation of SAF and Mr. Gottlieb on their own initiative, without receiving any consumer complaints suggesting unlawful activity.  *Id.* ¶¶ 34, 37.  They did not launch any similar investigation into pro-gun control advocacy groups.  *Id.* ¶ 51.  When SAF and Mr. Gottlieb repeatedly inquired about the purpose of the investigation and how they could bring their conduct into compliance with the law, Defendants offered a series of shifting, pretextual explanations that did not stand up

---

[11] If Defendants had a sliver of justification, that would not absolve them.  So long as political animus was a "substantial motivating factor" such that Defendants would not have undertaken the same actions "in the absence of the plaintiff's protected conduct," Defendants violated SAF and Mr. Gottlieb's constitutional rights.  *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 976 (9th Cir. 2002); *White*, 227 F.3d at 1238 (officials violated First Amendment where "[t]he breadth of the [retaliatory] investigation and the measures the officials took during its course bore no relation to the narrow purpose on which they" relied).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 15

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to even superficial scrutiny.  *Id.* ¶ 33.  As examples, they suggested that they suspected unlawful autodialing when no Plaintiff entity has ever used autodialing technology, and they indicated they suspected unjust enrichment from business arrangements that were court-approved and subject to repeated public audits, among other safeguards.  *Id.* ¶ 33.  Defendants failed to timely or fully respond to a PRA request about the origins of the investigation. *Id.* ¶ 35-37.  And no focus has emerged after over two years of investigation, as evidenced by the meandering questions in Mr. Gottlieb's deposition that bore no relation to the previously cited legal theories and covered such irrelevant topics as incidental correspondence from nearly 50 years ago.  *Id.* ¶ 38.  When called out on political animus, Defendants offered yet another pretext, claiming an unidentified entity or entities had violated non-profit registration requirements, then refused to respond when SAF and Mr. Gottlieb demonstrated that this explanation, too, was false.[12]  *Id.* ¶ 40-41.  Additionally, Defendants' have a history of legal challenges to conservative policies, politicians, and groups to generate publicity for political gain (*Id.* ¶¶ 13-15) and of using CPD and CIDs to unconstitutionally chill speech they disagree with.  *Id.* ¶ 19.

Defendants refuse to engage any of these facts and instead struthiously claim SAF and Mr. Gottlieb have offered only naked assertions of malicious intent.  The facts alleged are more than enough to create a plausible inference of unconstitutional motive.  Aside from an admission from the AG himself, the facts alleged are all a plaintiff could ever reasonably have without access to Defendants' internal records or communications.  Especially in light of the Court's duty to draw

---

[12] State Defendants claim a letter by Defendant Studor's l is "incorporated in the Complaint by reference," and they seem to wish this Court to assume its contents are true.  Dkt. 8 at 3 n.3.  This is not how incorporation by reference works.  *See Sviridyuk v. BAC Home Loan Servicing, LP*, 3:11-CV-01107-SI, 2012 WL 174791, at \*2 (D. Or. Jan. 20, 2012) ("The doctrine of incorporation by reference is not an invitation to introduce evidence challenging the merits of a plaintiff's case as part of a motion to dismiss.").  Moreover, if the Court were to consider the full contents of this outside-the-pleadings letter, fairness and Rule 12 would require this motion to be converted to a Rule 56 motion, and for the Court to consider any evidence the discovery process might reveal and the letters Mr. Studor was responding to and the response to Mr. Studor's letter, which debunk Mr. Studor's claims.  *See* Lovejoy Decl. Ex. A-B.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 16

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    reasonable inferences in SAF and Mr. Gottlieb's favor, the Complaint provides far more than

2    naked or formulaic assertions. *Retail Prop. Tr.*, 768 F.3d at 945.

### a. The Complaint Pleads Constitutional Violations

#### i. Viewpoint Discrimination

5    '[V]iewpoint discrimination' occurs when the government prohibits 'speech by particular

6    speakers,' thereby suppressing a particular view about a subject." *Giebel v. Sylvester*, 244 F.3d

7    1182, 1188 (9th Cir.2001).  Defendants acknowledge that "government suppression of speech

8    based on the speaker's motivating ideology, opinion, or perspective is impermissible." *Moss v.*

9    *U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).  But they falsely claim Plaintiffs' viewpoint

10   discrimination claim "rests solely" on the fact that Defendants have not subjected pro-gun control

11   groups to sham investigations.  They then argue those groups are not similarly situated because

12   SAF and Mr. Gottlieb do "not allege any of these 'anti-gun group[s]' engaged in conduct

13   warranting an investigation by the AGO."  Dkt. 8 at 15-16.

14   Once again, Defendants are wrong both coming and going.  Disparate treatment is *one*

15   method of demonstrating unconstitutional motive.  *See, e.g.*, *Cangress v. City of Los Angeles*,

16   214CV01743SVWMAN, 2015 WL 12661920, at *7 (C.D. Cal. Jan. 20, 2015).  And SAF and Mr.

17   Gottlieb *have* alleged that Defendants subjected them to disparate treatment as compared to

18   similarly situated advocacy groups on the other side of the gun debate.  Compl. ¶ 51.  Their

19   Complaint clearly alleges that Defendants have no basis for suspecting SAF or Mr. Gottlieb of

20   unlawful conduct, *id.* ¶ 42, so Defendants' request that the Court assume that there is a basis for

21   such suspicion in order to declare other groups "not similarly situated" is anathema to the motion

22   to dismiss standard.  *Retail Prop. Tr.*, 768 F.3d at 945.  Moreover, SAF and Mr. Gottlieb do not

23   "solely" rely on disparate treatment to demonstrate Defendants' unconstitutional motive.  They

24   allege a series of factual events from which the only reasonable inference is that Defendants are

25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 17

1   motivated by political malice.  *Supra* § III.C.2.a.  Defendants fail to engage with the vast majority

2   of these allegations.

3              ### ii.  First Amendment Retaliation

4        In a First Amendment retaliation claim: "the plaintiff must allege that (1) it engaged in

5   constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary

6   firmness' from continuing to engage in the protected activity; and (3) the protected activity was a

7   substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the

8   defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n*, 824 F.3d at 867 (citations

9   omitted).  Defendants attempt to insert a phantom fourth requirement, arguing Plaintiffs failed to

10  plead they have actually been chilled from filing lawsuits.

11       First, the constitutionally-protected activities that SAF and Mr. Gottlieb engaged in that

12  motivated Defendant's retaliation are not limited to lawsuits.  SAF and Mr. Gottlieb are involved

13  in a wide range of gun-rights and other conservative activism. Compl. ¶¶ 1-7.  They have also

14  publicly criticized Mr. Ferguson's office (who has returned the favor).  *Id.* ¶ 25.  All of this activity

15  positioned SAF and Mr. Gottlieb as Defendants' political enemies, leading Defendants to target

16  them for a retaliatory investigation.  *Id.* ¶ 42.  And, as discussed above, Defendants' retaliation

17  *has* chilled protected expression by diverting Plaintiffs' resources to responding to the

18  investigation and away from political advocacy.  *Supra* § III.B.2.

19       Defendants are also again wrong that it *matters* whether the Complaint alleges that

20  protected activities were chilled.  Courts have reaffirmed time and again that a "plaintiff is not

21  required to demonstrate that its speech was actually suppressed or inhibited."  *Ariz. Students'*

22  *Ass'n*, 824 F.3d at 867.  Instead "an objective standard governs the chilling inquiry" and a plaintiff

23  must only show "that the adverse action at issue would chill or silence a person of ordinary

24  firmness from future First Amendment activities."  *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th

25  Cir. 2009) (citations omitted).  The Ninth Circuit has already held that being subjected to a

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 18

retaliatory investigation just like Defendants' would chill a person of ordinary firmness. *See White*, 227 F.3d at 1229 (finding officials' conduct "more than meets that standard" where they "directed the plaintiffs under threat of subpoena to produce" documents, "interrogated the plaintiffs, again under threat of subpoena," sent a letter to plaintiffs asserting their "authority to investigate" them, falsely "stated that the plaintiffs had violated" laws, and informed third-parties that "the plaintiffs had 'broken the law').[13]

Defendants also contend that SAF and Mr. Gottlieb failed to allege "a nexus" between its investigation and their constitutionally protected conduct. Dkt. 8 at 17. This is a recapitulation of their denials regarding their motives. Defendants again fail to engage with the numerous facts SAF and Mr. Gottlieb allege that support the inference of a malicious motive, *supra* § III.C.2.a, including Defendants' repeated offering of pretextual explanations that were easily proven false. Defendants having "reason to believe SAF may have violated the CSA and CPA" is therefore not an "obvious alternative explanation" for the facts that the Court must accept as true in this posture, Dkt. 8 at 17 (quoting *Iqbal*, 556 U.S. at 682), as it does not explain Defendants' continuously changing their story. The Complaint states a claim for unconstitutional retaliation.

### iii. Unreasonable Search

Defendants recognize that a CID violates the Fourth Amendment where "the inquiry is [not] within the authority of the agency" or "the information sought is [not] reasonably relevant" to a valid investigation. Dkt. 8 at 18 (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) and *Steele*, 537 P.2d at 788). And they acknowledge that a CID issued in bad faith and for

---

[13] Defendants make a token effort to distinguish *White* by claiming that a person of ordinary firmness would not be chilled here because they can seek judicial review of the CID. Dkt. 8 at 17. First, the plaintiffs in *White* could have refused to cooperate and sought judicial review—the opinion specifically notes the officials' demands were made "under threat of subpoena," which they presumably could have moved to quash. 227 F.3d at 1229. But the Ninth Circuit did not consider this fact material. Second, SAF and Mr. Gottlieb could not have effectively sought judicial review of their own CIDs, let alone the third-party CIDs. *Supra* § III.A. Third, this is not a meaningful distinction in any event; if the stress and expense of *cooperating* with an investigation is sufficient to chill a person of ordinary firmness, the much greater stress and expense of *challenging* an investigation must certainly be as well.

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the purpose of harassment rather than to investigate unlawful activity is beyond their statutory authority.[14]  *Id.* at 19 (citing *Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Schs.*, 854 F.3d 683, 689 (D.C. Cir. 2017); *FDIC v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997)); *see also SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 317 (5th Cir. 1981)("[F]raud, deceit or trickery is grounds for denying enforcement of an administrative subpoena[.]").  Once more, Defendants' only true objection is to fight the motion to dismiss standard, claiming Plaintiffs have not alleged "specific evidence"[15] of their retaliatory purpose.  Dkt. 8 at 19.  Once more, Defendants wholly fail to engage with the specific facts alleged in the Complaint that give rise to the inference of unconstitutional motive.  *Supra* § III.C.2.a.  SAF's allegations are not "conclusory" simply because Defendants ignore most of them.[16]

### b.  Defendants' Conduct Violates Clearly Established Law

"[Q]ualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if 'the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier*, 520 U.S. 259, 270 (1997).  Defendants have no

---

[14] Defendants argue that "SAF does not allege that any records sought were irrelevant to an investigation into its financial and governance affairs."  Dkt. 8 at 19.  But the standard is not whether the information sought is relevant to SAF's affairs.  Under RCW 19.86.110(1), information must be relevant to "an investigation of a possible *violation*" of enumerated statutes.  (Emphasis added.)  Where a CID is for the purpose of harassment and not based on a belief that a statute has been violated, the information it seeks is per se irrelevant to an investigation of a possible violation of the statutes.

[15] The cases Defendants cite reference "evidence" because they concerned enforcement proceedings in which the parties could introduce evidence of a malicious motive.  SAF and Mr. Gottlieb cannot be required to submit extrinsic evidence in response to a motion to dismiss for failure to state a claim.  The Court's analysis is based on the allegations in the Complaint.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.2011).

[16] Defendants also acknowledge that a CID violates the Fourth Amendment if it is not subject to meaningful pre-enforcement judicial review.  Dkt. 8 at 19-20 (citing *Patel v. City of Los Angeles*, 738 F.3d 1058, 1063 (9th Cir. 2013)).  Given that there was no opportunity for Plaintiffs to challenge the third-party CIDs; the State veiled its retaliatory motivation, preventing a petition to set aside the Plaintiffs' CIDs; and Defendants' position that SAF and Mr. Gottlieb have no right to object to enforcement now, *supra* § III.A, the lack of available judicial review is another reason Defendants actions violate the Fourth Amendment.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS – 20

1    serious argument that, if they targeted SAF and Mr. Gottlieb for a sham investigation because of

2    their political beliefs, they could not have known their conduct was unconstitutional.

3           The Ninth Circuit considered retaliatory conduct that is legally indistinguishable from

4    Defendants' in *White v. Lee*, 227 F.3d. at 1229.  The officials in *White* "directed the plaintiffs

5    under threat of subpoena to produce" voluminous documents, "interrogated the plaintiffs, again

6    under threat of subpoena," sent a letter to the plaintiffs claiming they had "authority to investigate"

7    allegations regarding the plaintiffs supposedly unlawful conduct, falsely told the plaintiffs they

8    had violated laws, and defamed the plaintiffs by informing third parties that "the plaintiffs had

9    'broken the law.'"  *Id.*  The officials' motivation was to retaliate against Plaintiff's protected

10   speech, political beliefs, and filing of lawsuits of which the officials disapproved.  *Id.* at 1227-28.

11   The court denied qualified immunity because "the unconstitutionality of each of the [] officials'

12   actions was apparent at the time they acted."  *Id.* at 1239.  It explained that "[t]he plaintiffs' claim

13   [was] founded on bedrock First Amendment principles and legal rules that this court and the

14   Supreme Court have applied for decades, if not centuries."  *Id.*

15          Defendants' only rejoinder is to deny the basic nature of SAF and Mr. Gottlieb's claims.

16   They argue that "[t]here is no 'clearly established law' holding that a government agency's service

17   of non-self-executing CIDs that are subject to judicial oversight is itself unlawful viewpoint

18   discrimination, retaliation, or an unreasonable search in violation of the Constitution."  Dkt. 8 at

19   20-21.  But SAF and Mr. Gottlieb do not claim serving CIDs "*is itself*" a Constitutional violation.

20   Defendants know that serving a series of CIDs *in bad faith as retaliation for constitutionally-*

21   *protected conduct* violates the Constitution.  Similarly, Defendants claim "there is no 'clearly

22   established law' that government agencies are required to preview investigative findings, legal

23   theories, or factual allegations before deciding to file an enforcement action."  Dkt. 8 at 21.  Again,

24   SAF and Mr. Gottlieb do not argue Defendants violated the Constitution by failing to preview

25   their findings or legal theories.  (In fact, Defendants *did* "preview" some findings that they knew

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 21

were patently false.  Compl. ¶¶33, 40-41.)  SAF and Mr. Gottlieb's claim is that Defendants targeted them for a sham investigation because of their political beliefs and protected expression, and the shifting pretextual rationales Defendants previewed are facts *evidencing* that plainly unconstitutional motive.

**D.      SAF and Mr. Gottlieb's Complaint Presents Valid State Law Claims**

**1.   Defendants have Committed Abuse of Process**

A defendant commits the tort of abuse of process when they commit "an act in the use of legal process not proper in the regular prosecution of the proceedings" for "an ulterior purpose— to accomplish an object not within the proper scope of the process." *Hough v. Stockbridge*, 216 P.3d 1077, 1086 (2009).  In their objections to the abuse of process claim, Defendants elevate form over function, arguing that—because their CIDs were issued pursuant to statute rather than the civil rules (which the CID statute expressly references and incorporates),[17] they do not constitute "legal process."[18]  Dkt. 8 at 21-22.  This is a distinction without a difference.

Discovery requests can support an abuse of process tort claim if misused.  *See, e.g.*, *Hough*, 216 P.3d at 1086.  The cases Defendants cite reference invoking the authority of a court for the simple reason that normally, litigants have no legal authority to issue a subpoena or discovery request *without* a lawsuit.  But here, the CIDs are the functional equivalent of discovery requests outside a lawsuit.  RCW 19.86.110(8).  There is no logical reason a discovery request should be able to support an abuse of process claim where a CID cannot.  *Shukla v. Sharma*, 07-CV-2972 CBA CLP, 2012 WL 481796, at *2 (E.D.N.Y. Feb. 14, 2012) ("Abuse of the law or legal process

---

[17] *See* RCW 19.86.110(5)(b)-(c) (interrogatories and depositions shall occur "in the same manner as provided in the civil rules for superior court").

[18] Defendants' claim that the CIDs were not issued in connection with an ongoing legal proceeding contradicts their prior argument that *Younger* required this court to abstain from hearing this case because their investigation constituted an ongoing "civil enforcement proceeding."  *See SAF v. Ferguson I*, Dkt. 14 at 10-13 ("[T]he AGO's ongoing investigation … falls squarely within the type of civil enforcement proceeding to which *Younger* applies."). It is also directly at odds with Defendants argument that its CIDs are so integral to the judicial process that absolute immunity is appropriate.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 22

is the use of threats of legal action, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed"); *United States v. Powell*, 379 U.S. 48, 58 (1964) (administrative summons would be abuse of process if it "had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."). Indeed, because CIDs are served outside a lawsuit with only a twenty-day objection window, they are even more susceptible to abuse than subpoenas.

What remains of Defendants' objections are the same tired claims as before—that SAF and Mr. Gottlieb have failed to plausibly allege they issued the CIDs for purposes of harassment rather than collecting evidence of a possible statutory violation.[19] Dkt. 8 at 21-22. As before, Defendants fail to engage with any of the specific allegations giving rise to the inference of their malicious motives, *supra* § III.C.2.a.

### 2. SAF and Mr. Gottlieb's claims under the PRA are not Premature.

Finally, Defendants contend that SAF and Mr. Gottlieb's PRA claim is premature because Defendants have not issued a formal decision denying their PRA request. First, Defendants ignore that this reasoning is inapplicable to one of the primary aspects of Plaintiffs' PRA claim—that Defendants violated the PRA by *using* a plainly responsive document it had not disclosed *during Mr. Gottlieb's deposition. See* RCW 42.56.080(6) ("A public record may be relied on [or] used… by an agency against a party… only if … [p]arties affected have timely notice[.]"). This violation was consummated when Defendants used the undisclosed document.

Further, the case law Defendants quote belies their argument regarding their failure to timely provide responsive records. Defendants ignore the reference to "inaction" when they state

---

[19] Defendants go as far as to claim CIDs are "meant to be used[] to collect evidence relating to SAF's business activities." Dkt. 8 at 22. Obviously, the purpose of a CID is to collect evidence of a possible violations of the specifically enumerated statutes, RCW 19.86.110(1), not to document business activities for their own sake.

**CORR CRONIN LLP**
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    "there must be some agency action, *or inaction*, indicating that the agency will not be providing

2    responsive records." Dkt. 8 at 23 (emphasis added) (quoting *Hobbs v. State*, 335 P.3d 1004, 1008

3    (Wash. Ct. App. 2014)).  Washington courts have made clear that "an agency's inaction, or lack

4    of diligence in providing a prompt response to a records request can ripen into constructive denial

5    for purposes of fees, costs, and penalties under the PRA." *Cantu v. Yakima Sch. Dist. No. 7*, 514

6    P.3d 661, 678 (Wash. App. 2022).  Similarly, "the failure to perform an adequate search is

7    tantamount to a denial of the request." *Id.*  And "[i]f an agency has failed to produce records for

8    'an extended period' after missing an estimated deadline, the requestor may treat the agency's

9    silence as a denial and file suit." *Id.* at 679–80.

10          The Complaint alleges that Defendants provided an estimated deadline for its full

11   production of September 15, 2022.  Compl. ¶ 36.  A year later, Defendants still had not made a

12   full production.  Further, Defendants were knowingly in possession of at least one responsive

13   document before January 12, 2023—the date of Mr. Gottlieb's deposition—that they neither

14   produced nor claimed a right to withhold in the subsequent nine months before the filing of the

15   Complaint. *Id.* ¶ 73; *cf. Progressive Animal Welfare Soc. v. Univ. of Washington*, 884 P.2d 592,

16   607 (Wash. 1994) ("The [PRA] clearly and emphatically prohibits silent withholding by

17   agencies[.]").  This is an unreasonable delay and at minimum indicates Defendants have exercised

18   a "lack of diligence" and failed "to perform an adequate search," *Cantu*, 514 P.3d at 678,

19   constituting a constructive denial of the PRA request.  Defendants' claims of prematurity are

20   unfounded.

21                              **IV.    CONCLUSION**

22          SAF and Mr. Gottlieb respectfully request that the Court deny Defendants' motion or grant

23   the alternative relief requested above.

24

25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 24

1    DATED:  November 13, 2023.

2                                                    This motion contains 8,396 words per LCR 7(e).

3                                           CORR CRONIN LLP

4                                           *s/ Jack M. Lovejoy*
5                                           Steven W. Fogg, WSBA No. 23528
                                            Jack M. Lovejoy, WSBA No. 36962
6                                           1015 Second Avenue, 10th Floor
                                            Seattle, WA 98104-1001
7                                           (206) 625-8600 Phone
                                            (206) 625-0900 Fax
8                                           sfogg@corrcronin.com
                                            jlovejoy@corrcronin.com
9
                                            *Attorneys for Plaintiffs*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 25

1

**CERTIFICATE OF SERVICE**

2

3
        I hereby certify that on November 13, 2023, I caused the foregoing document to be

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

4

notification of such filing to all counsel of record.

5

6
                                        *s/ Wen Cruz*
                                        Wen Cruz

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS – 26

CORR CRONIN LLP
1015 Second Avenue, 10th Floor
Seattle, WA 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900