The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

THE SECOND AMENDMENT FOUNDATION; THE CITIZENS COMMITTEE FOR THE RIGHT TO KEEP AND BEAR ARMS; LIBERTY PARK PRESS; MERRIL MAIL MARKETING; CENTER FOR THE DEFENSE OF FREE ENTERPRISE; SERVICE BUREAU ASSOCIATION; and ALAN GOTTLIEB,

Plaintiffs,

v.

ROBERT FERGUSON, individually and in his official capacity as Washington Attorney General; JOSHUA STUDOR, individually and in his official capacity as Washington Assistant Attorney General, Consumer Protection Division; THE ATTORNEY GENERAL'S OFFICE FOR THE STATE OF WASHINGTON; and JOHN DOES 1-10,

Defendants.

NO. 2:23-cv-01554-MJP

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

NOTE ON MOTION CALENDAR: NOVEMBER 17, 2023

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. SAF Had, and Has, Ample Opportunities to Raise Its Arguments ..... 1

B. SAF's Claims Are Not Ripe ..... 3

1. Defendants have not waived ripeness arguments ..... 3

2. SAF's claims are not prudentially ripe ..... 4

3. SAF's claims are not constitutionally ripe ..... 6

C. SAF's § 1983 Claims Are Barred by Immunity and Lack Merit ..... 7

1. Absolute immunity bars SAF's claims for monetary damages ..... 7

2. Qualified immunity also bars SAF's claims ..... 8

a. The Complaint does not plead a constitutional violation ..... 8

(1) Viewpoint discrimination ..... 8

(2) First Amendment retaliation ..... 10

(3) Unreasonable search ..... 11

b. There was no violation of clearly established law ..... 11

D. SAF's State Law Claims Fail as Well ..... 12

1. SAF's abuse of process claim fails ..... 12

2. SAF's PRA claim is premature ..... 12

III. CONCLUSION ..... 13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## I. INTRODUCTION

Like everyone else, SAF is obligated to follow state laws. And as Washington's chief law enforcement officer, the Attorney General has the responsibility to ensure compliance with those laws. Having unilaterally declared themselves "enemies" of AG Ferguson, Dkt. #14 (Opp'n) at 2, SAF urges this Court to disregard the AG's role, and assume, based on their say-so, that any investigation into their affairs can *only* be explained by political animus. But this Court is not obligated to indulge SAF's skewed views of reality.

SAF's efforts to shut down the AGO's investigation is improper and fails on the merits. Courts routinely dismiss cases seeking to shut down ongoing investigations. SAF cannot distinguish its claims from those dismissed in *Twitter*, *Google*, and similar cases. Instead, SAF dials up the rhetoric, accusing the AGO of gamesmanship in removing this case. But the fact that the AGO asks a federal court to decide whether SAF's federal claims are constitutionally ripe is hardly the smoking gun SAF insists it is. SAF themselves filed in this Court and still maintain their suit is properly here. Nor does removal prejudice SAF because SAF's claims would be unripe in state court just as they are in federal court. But even if this Court were to disregard Defendants' justiciability arguments, SAF's claims would still be subject to dismissal because Defendants are entitled to immunity and SAF fails to state any claim. Fundamentally, SAF's claims turn on a misunderstanding of Washington's CID process and their baseless allegations about the AG's supposed desire to target them. SAF's Complaint should be dismissed.

## II. ARGUMENT

### A. SAF Had, and Has, Ample Opportunities to Raise Its Arguments

SAF's response—indeed, their entire Complaint—hinges on a misunderstanding of the CID process. According to SAF, Washington's CID statute required them to raise every conceivable objection within 20 days or forever waive them. Opp'n at 5. That's not true.

Rather, the recipient of a CID has three options: (1) comply with the CID; (2) petition to modify or set aside the CID within twenty days, *see* RCW 19.86.110(8); or (3) refuse to respond,

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*see* RCW 19.86.110(9). If the recipient refuses to respond, the AGO can only compel compliance by bringing an enforcement action. *See id.*

These protections provide ample opportunity for SAF to raise their objections. If SAF believed the CID did not sufficiently identify the subject matter under investigation they could have moved to set it aside and raised any alleged constitutional violations. RCW 19.86.110(8); *see, e.g.*, *In re Confidential Consumer Prot. Investigation*, 20 Wn. App. 2d 1025, 2021 WL 5813794, at *3 (Dec. 7, 2021) (unpublished). While there is an initial 20-day window in which to challenge a CID, that does mean that any future objections are foreclosed. Instead, when the AGO files a CID enforcement action, recipients can and do raise constitutional objections. *See, e.g.*, *State v. Brelvis Consulting LLC*, 436 P.3d 818 (Mar. 12, 2019) (considering the recipient's constitutional objections).

SAF argues that "[a]t least one trial court" found a CID recipient is "procedurally defaulted from raising any defense if Defendants later petition to enforce the CID," Opp'n at 5, but they misconstrue that ruling. Although the trial court found "'the Respondent did not move to set aside the [CID] within 20 days, as is required by the statute,'" it nonetheless considered constitutional challenges in an enforcement petition. *Brelvis*, 436 P.3d at 829 (finding no unreasonable search) (quoting trial court transcript). On appeal, the Court of Appeals "[a]ssum[ed], without deciding, that the superior court erred in relying on Brelvis' failure to meet the 20-day deadline," and found that the CID nevertheless survived the recipients' constitutional objections. *Id.*

While SAF complain they have "never had a meaningful opportunity … to present their claims," Opp'n at 6, that is because of their own strategic choices. SAF *chose* to "compl[y]" rather than challenge the CID, even though they purportedly did "[n]ot understand[] the point of the investigation." Dkt. #1-2 (Compl.) ¶32. And they made this decision with counsel. *Id.* Even now, if SAF choose to stop complying with the CID, the AGO may only compel compliance via an enforcement action, in which SAF can raise their constitutional objections. *See generally*



ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Brelvis*, 436 P.3d at 818. All of this underscores the fact that SAF's claims in this matter are not ripe; there simply is no current case or controversy because of SAF's own strategic decisions vis-à-vis the CIDs.

SAF also complains about supposedly "defamatory CIDs" served on third parties. Opp'n at 9. While SAF was unable to challenge these, they were subject to judicial review as the AGO had to obtain "prior court approval" to issue them. *See* RCW 19.86.110(6). And as SAF acknowledge, because those entities were under court order not to disclose the CIDs, any potential reputational harm to SAF was minimized. Compl. ¶¶28-30; *see infra* 5, 7 (discussing absence of harm).

In short, SAF could have—and, if the AGO ever seeks to enforce the CID or files suit, still can—raise their arguments in the appropriate forum. What they may not do, however, is collaterally attack and shut down an ongoing investigation via this lawsuit.

**B. SAF's Claims Are Not Ripe**

**1. Defendants have not waived ripeness arguments**

Before addressing the merits of the AGO's ripeness arguments, SAF contends the AGO has waived them. Opp'n at 6-8. SAF is incorrect.

With respect to prudential ripeness, SAF asserts the AGO's removal constitutes "improper 'procedural gamesmanship'" since the AGO supposedly "remove[d] the case from a court where it could have been adjudicated" to one where it cannot. *Id*. at 7. But this case is not ripe in any forum. Washington courts apply the same prudential ripeness standard as federal courts. *Compare State v. Bahl*, 193 P.3d 678, 685 (2008) (ripeness in Washington turns on whether "the issues raised are primarily legal, do not require further factual development, and the challenged action is final" as well as a "consider[ation of] 'the hardship to the parties of withholding court consideration'") *with* Dkt. #8 (MTD) at 9-11 (outlining these precise factors under federal law). SAF can't meet these standards in either court. Thus, removal does not deny SAF a proper forum—because there is no proper forum for their unripe claims.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

The cases SAF cite all concern the application of *Williamson* ripeness, a since-overruled doctrine specific to Takings claims that required plaintiffs to first seek compensation in state court before seeking relief in federal court. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled by Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162 (2019); Opp'n at 7-8 (citing cases). Under *Williamson*, ripeness *turned* on whether plaintiffs had first sought compensation in state court. It thus made sense that a defendant would "waive[] the state-litigation requirement by removing the case to federal court." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 544 (4th Cir. 2013). That waiver principle has no application here where SAF's claims are equally unripe in federal and state court.

With respect to constitutional ripeness, the Court's "[s]ubject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). SAF is correct that remand is appropriate if SAF's claims are constitutionally unripe, Opp'n at 6—as the AGO acknowledged. MTD at 5 n.5. While the AGO doubts SAF has suffered any injury, SAF vigorously insists that they have, Opp'n at 8-10. There is thus a robust, good-faith disagreement which must be resolved by this Court. Given that SAF previously filed this exact suit in this Court and continues to insist federal jurisdiction is appropriate, removal was appropriate. Particularly because if SAF's claims *are* constitutionally ripe, this Court is undeniably the appropriate court to rule on prudential ripeness and/or SAF's constitutional challenges. Regardless, an award of fees is not appropriate even if this Court concludes this case is constitutionally unripe. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005) ("[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal.").

**2.     SAF's claims are not prudentially ripe**

Because "[a]n investigation, even one conducted with an eye to enforcement, is quintessentially non-final as a form of agency action," lawsuits challenging ongoing

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS --
NO. 2:23-cv-01554-MJP

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

investigations are unripe. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000); *see also* MTD at 9 (citing cases).

SAF insists this case is different from the many cases dismissing suits just like it because here SAF alleges that the AGO's investigation was motivated by improper purposes. Opp'n at 10. But the same was true in *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1172 (9th Cir. 2022) (dismissing suit). And in *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) (dismissing suit); *see also Google, Inc. v. Hood*, 96 F. Supp. 3d 584, 598 (S.D. Miss. 2015), *vacated and remanded* (May 18, 2016) (detailing allegations of retaliation). And in other cases, too. *See, e.g.*, *CBA Pharma, Inc. v. Harvey*, 2022 WL 983143, at *2 (E.D. Ky. Mar. 30, 2022); *Beam v. Gonzales*, 548 F. Supp. 2d 596, 605 (N.D. Ill. 2008). Ultimately, SAF does not cite a *single case* concluding a challenge like this, to an ongoing governmental investigation using non-self-executing CIDs, is ripe.

SAF fares no better in arguing they will suffer "direct and immediate hardship" absent review by this Court. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). As explained above (at 2), SAF is simply wrong that they "*cannot assert* constitutional objections if Defendants move to enforce the CIDs," Opp'n at 11. SAF's reliance on alleged past harms (*id.*) doesn't cut it either. "[A] litigant must show that withholding review would result in direct and immediate hardship and *would entail more than possible financial loss*." *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999) (emphasis added). SAF's desire to be compensated for alleged past harms is simply not the sort of harm that justifies adjudicating an unripe case.

Even were a damages claim enough, as *Twitter* explained, any injuries SAF supposedly suffered in responding to a non-enforceable CID "are self-inflicted because the actions were voluntary." *Twitter*, 56 F.4th at 1176. And any alleged reputational injuries are entirely speculative, particularly as more than two years have passed since Defendants sent CIDs to third

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

parties. MTD at 8. Finally, SAF cannot collect damages for any alleged harms because of absolute and qualified immunity. *Id*. at 12-21.

By contrast, as Defendants explained, and as SAF does not dispute, adjudication of this unripe suit will prejudice the AGO by forcing it to litigate the merits of its investigation when it has not yet made an enforcement decision and will open up future AGO investigations to exactly this sort of collateral attack.

This is not a close call: SAF's claims should be dismissed as unripe.

**3. SAF's claims are not constitutionally ripe**

On constitutional ripeness, this case appears on all fours with *Twitter*. MTD at 5-8. As the Ninth Circuit held there, a party's "naked assertion that its speech has been chilled is a bare legal conclusion upon which it cannot rely to assert injury-in-fact." *Twitter*, 56 F.4th at 1175 (quotation omitted). And alleged harms stemming from compliance with a non-self-executing CID do not "create an Article III injury," because they are voluntarily undertaken. *Id.* at 1176.

SAF tries to distinguish *Twitter* by arguing that some of the plaintiffs here "are advocacy organizations whose business *is* constitutionally protected political expression," so any diversion of its resources spent "responding to the investigation," counts as actual chilling. Opp'n at 8. But *Twitter* forecloses this argument because any resources SAF diverted voluntarily complying with the CID "[we]re self-inflicted" harms. *Twitter*, 56 F.4th at 1176.

SAF further attempts to distinguish *Twitter* by arguing it has suffered not just chilling, but retaliatory treatment, an injury in and of itself. Opp'n at 9. Except Twitter, too, "argu[ed] that the CID was government retaliation for speech protected by the First Amendment." *Twitter*, 56 F.4th at 1172. But under "the retaliatory framework," the Court concluded "Twitter's allegations are not enough to establish constitutional standing and ripeness because Twitter fails to allege any chilling effect on its speech or any other legally cognizable injury." *Id.* at 1175. Twitter's allegations of harm were, if anything, more concrete than SAF's. MTD at 7. As in

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*Twitter*, so too here: SAF's speculative claims of injury, and its alleged injuries from voluntary compliance, do not make an Article III injury.

SAF's references to reputational injuries, financial injuries, and emotional injuries are likewise insufficient. Opp'n at 9. SAF's reputational injuries are speculative because they did not plead, and cannot show, that third parties have responded negatively toward SAF. MTD at 8. With respect to the time, money, and stress responding to CIDs, once again, voluntary compliance simply does not suffice to show injury-in-fact. *Twitter*, 56 F.4th at 1176.

**C. SAF's § 1983 Claims Are Barred by Immunity and Lack Merit**

**1. Absolute immunity bars SAF's claims for monetary damages**

SAF incorrectly argues that state attorneys are unprotected by absolute immunity because they engaged in "investigative activity." Opp'n at 14. In fact, absolute immunity protects "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). What matters is that the actions "require legal knowledge and the exercise of related discretion." *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012) (citation omitted). Whether a lawsuit is ultimately filed is irrelevant. *Botello v. Gammick*, 413 F.3d 971, 976 (9th Cir. 2005).

Issuing CIDs is quintessential advocacy work of a civil prosecutor and involves the "lawyerly functions of organizing and analyzing evidence and law[.]" *Lacey*, 693 F.3d at 913; *see also Garmon v. County of Los Angeles*, 828 F.3d 837, 844 (9th Cir. 2016) (prosecutor "entitled to absolute immunity for issuing the subpoena duces tecum"). SAF's argument that absolute immunity only applies to civil investigations after the filing of a complaint, Opp'n at 13 n.10, is wrong. *See, e.g.*, *McCormick v. City of Lawrence, Kan.*, 253 F. Supp. 2d 1156, 1158 (D. Kan. 2003) (assistant attorneys general are "absolutely immune from liability in their duties of investigating, working up, and presenting cases"). At bottom, Defendants acted as advocates when they served CIDs to SAF and are therefore entitled to absolute immunity for that action.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

There is also no question that absolute immunity protects government officials engaged in civil enforcement proceedings just as it does those engaged in criminal prosecution. *Butz v. Economou*, 438 U.S. 478, 515 (1978). SAF's suggestion to the contrary, *see* Opp'n at 12, ignores decades of precedent. Courts grant absolute immunity to "the President, judges, prosecutors, witnesses, [] officials performing 'quasi-judicial' functions, and legislators." *Fry v. Melaragno*, 939 F.2d 832, 836 (9th Cir. 1991) (citation omitted).

**2. Qualified immunity also bars SAF's claims**

**a. The Complaint does not plead a constitutional violation**

**(1) Viewpoint discrimination**

To save its viewpoint discrimination claim, SAF argues it is similarly-situated to gun-control advocates who have not been subject to AGO investigation. Not so.

SAF alleges the AGO had no basis for suspecting SAF or Mr. Gottlieb of unlawful conduct, but this Court can look to public records that show otherwise. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1001 (9th Cir. 2018).[1] Since at least 2016, SAF has filed Form 990s with the IRS that disclose repeated related-party transactions that suggest self-dealing. *See* Fraas Decl. Ex. 1 at 8, 29. For example, SAF's 2019 Form 990 shows it paid more than $400,000 to entities owned by Mr. Gottlieb, as well as $53,250 to his son and an additional $491,978 to the Service Bureau Association, another Mr. Gottlieb-associated entity. *Id.* at pp. 8, 29-30. These filings were suspicious enough that the Wall Street Journal called them "red flags" warranting an audit. *See* Fraas Decl. Ex. 2. SAF's complaint nowhere alleges any gun-control advocates engaged in similar conduct warranting an investigation.

SAF next contends they have "allege[d] a series of factual events from which the only reasonable inference is that Defendants are motivated by political malice." Opp'n at 17-18. But

[1] As the AGO has not yet made an enforcement decision, it has not publicly disclosed the findings of its investigation. Indeed, were it not for the filing of this lawsuit, the AGO's investigation would still be confidential. While SAF insists they are not asking the AGO to "preview their findings or legal theories," Opp'n at 21, that is precisely what their lawsuit does.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS -- NO. 2:23-cv-01554-MJP

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

"bare allegations of malice" are insufficient "to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). In any event, SAF's allegations are insufficient to plausibly infer "malice." SAF alleges the AG has different political views from SAF. But these allegations, at most, show that AG Ferguson—like many Washingtonians—supports gun control and has successfully defended Washington's gun control laws in court. SAF re-argues that the AGO has not issued CIDs to gun control advocates, Opp'n at 15, but again fails to allege any such groups have engaged in suspicious conduct. SAF protests that the AGO issued a CID without having received any consumer complaints, *id.*, but as previously explained to SAF, the AGO often does not receive complaints from charitable donors because "unlike typical consumers" they are "often unaware of a charity or nonprofit's misconduct." Dkt. #9-1 (MTD Ex. A). The AGO's diligence in proactively protecting consumers is hardly evidence of malice. SAF complains the AGO has inadequately apprised them of the findings of its investigations, Opp'n at 15-16, but the AGO has no obligation to discuss the findings of its investigation with a target. SAF gripes that the AGO has been slow to respond to its PRA request, *id.* at 16, but the AGO continues to make rolling productions to SAF's expansive 10-part PRR. *Infra* 12-13. Finally, SAF notes the AGO has previously sued the Trump Administration and Value Village (Compl. ¶¶13-15, 19), but fails to explain how these suits reflect animus towards SAF. It simply is not the case that the AGO engages in viewpoint discrimination whenever it investigates an entity that holds different political views.

Further, SAF makes no allegation whatsoever that AAG Studor acted with bias. *Pahls v. Thomas*, 718 F.3d 1210, 1231 (10th Cir. 2013) (viewpoint discrimination requires that "each defendant" acted with discriminatory purpose).

SAF's viewpoint discrimination claim fails.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**(2) First Amendment retaliation**

SAF does not dispute that the AGO's issuance of CIDs has not chilled their "gun-rights and other conservative activism." Opp'n at 18. Instead, SAF rely on *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000), to argue that the AGO's investigation would chill a person of "ordinary firmness" from future First Amendment activities. Opp'n at 18-19. But the government's coercive investigation in *White* is nothing like the non-self-executing CIDs issued here.

In *White*, the government investigators expressly demanded that individuals who had been writing letters, filing litigation, and testifying at hearings "cease" engaging in such speech. 227 F.3d at 1227. Officials threatened to "issue a charge against" the individuals that would expose them to "damages as great as $100,000," *id.* at 1222, and sent a letter stating plaintiffs had violated the law "by writing news articles" related to the project. *Id.* at 1229. Officials also told a newspaper plaintiffs had violated the law. *Id.*

Here, the AGO has done no such thing. The AGO issued non-self-executing, non-public CIDs to SAF related to its governance of its nonprofit corporations and charitable organizations. Compl. ¶28. The AGO never advised SAF to "cease all litigation and publications," *White*, 227 F.3d at 1228, nor suggested SAF's petitioning activities violated the law, nor threatened SAF with fines for its expressive activities. Nor has the AGO threatened SAF if it failed to comply with its CIDs. Indeed, because CIDs are non-self-executing, the AGO cannot require compliance. The only consequence to SAF for failure to comply would be a potential enforcement action, which would involve judicial review. Simply put, the threatening and coercive nature of the *White* investigation is a far cry from the CIDs issued here. *See Twitter, Inc. v. Paxton*, 2021 WL 1893140, at *4 (N.D. Cal. May 11, 2021), *aff'd*, 56 F.4th 1170 (9th Cir. 2022) (distinguishing *White* and other cases where "the potential consequences of the [government] investigation were serious," such as "imposition of a substantial fine," "arrest," or "loss of custody of a child"); *infra* 11-12 (further distinguishing *White*).

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Nor has SAF alleged facts from which this Court could plausibly infer that SAF's protected activity "was a substantial motivating factor" in the AGO's issuance of CIDs. Opp'n at 18. In *White*, for instance, HUD sought to have the plaintiffs "cease all litigation and publications" and advised the plaintiffs "they had violated the [law] by distributing 'discriminatory' flyers" and by "writing [certain] news articles." 227 F.3d at 1228-29. There are no such facts here.

**(3) Unreasonable search**

SAF argues their unreasonable search claim should survive because the AGO has "wholly fail[ed] to engage with the specific facts alleged in the Complaint that give rise to the inference of unconstitutional motive." Opp'n at 20. But, as discussed above (at 8-9), the Complaint fails to identify facts that Defendants' investigation is "purely retaliatory and not motivated by any reasonable suspicion of wrongdoing[.]" *See* Compl. ¶64. Here, the CIDs were issued in connection with possible violations of the statutes enumerated in RCW 19.86.110 and the information sought was reasonably relevant to that wrongdoing. The AGO's determination of relevancy "must be accepted so long as it is not obviously wrong." *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (cleaned up). Because SAF has failed to allege facts showing that the information sought was not reasonably relevant to the AGO's investigation, this claim must be dismissed.

**b. There was no violation of clearly established law**

Further, Defendants are entitled to qualified immunity even if Plaintiffs *had* plausibly alleged constitutional violations. SAF asserts that Defendants violated its clearly established First Amendment rights because they acted with bias in investigating them. Opp'n at 15. But "Plaintiffs identify no caselaw that clearly established that a retaliatory investigation per se violates the First Amendment," which is their burden. *Moore v. Garnand*, 83 F.4th 743, 752-53 (9th Cir. 2023); *see also id.* at 753 ("[W]e were also unable to find any binding precedent that clearly established a First Amendment violation based on a retaliatory investigation."). The sole

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

case identified by SAF is *White*. Opp'n at 21. But the Ninth Circuit addressed the *White* decision in *Moore* and explained that *White* did not hold that "a retaliatory investigation by itself was unconstitutional," but rather that the "*entirety* of the officials' act[ion]"—including direct threats to cease petitioning activity, described above—was unconstitutional. 83 F.4th at 752 (cleaned up). The Court thus concluded that *White* could not have put defendants on notice that their actions in "unjustifiably pursuing a criminal investigation" would violate the plaintiffs' First Amendment rights. *Id.* Here, as in *Moore*, "[b]ecause Plaintiffs fail to meet their burden of showing that Defendants' investigatory conduct violated clearly established law, Defendants are entitled to qualified immunity." *Id.* at 753.

**D.    SAF's State Law Claims Fail as Well**

   **1.    SAF's abuse of process claim fails**

The "crucial inquiry" for abuse of process is "whether the *judicial system's process*, made available to insure the presence of the defendant or his property in court, has been misused to achieve another, inappropriate end." *Sea-Pac Co., Inc. v. United Food & Com. Workers Loc. Union 44*, 699 P.2d 217, 806 (1985) (emphasis added; quotation omitted). This requires "an act *after filing suit* using legal process empowered by that suit." *Id.* (emphasis added). SAF requests an exemption for CIDs because they are *like* discovery requests. Opp'n at 22. But under Washington law, the lack of a lawsuit is dispositive. Because abuse of process does not apply to non-self-executing CIDs that occur *before* litigation, SAF's abuse of process claim fails.

   **2.    SAF's PRA claim is premature**

"[B]efore a requester initiates a PRA lawsuit against an agency, there must be some agency action, or inaction, indicating that the agency will not be providing responsive records." *Hobbs v. State*, 335 P.3d 1004, 1009 (Wash. Ct. App. 2014). Here, the Complaint acknowledges the AGO is still consistently producing records. Compl. ¶36. That is dispositive.

*Cantu v. Yakima School District No. 7*, on which SAF relies to argue constructive denial (Opp'n at 24), is inapposite. 514 P.3d 661 (Wash. Ct. App. 2022). In *Cantu*, the agency

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS -- NO. 2:23-cv-01554-MJP

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

"'ignore[d] a request for an extended period of time," falsely stated public records office had been closed, and let five months pass between productions. *Id.* at 668. Here, by contrast, SAF admits the AGO made a production "[a]s recently as September 7, 2023," and that another batch "would be arriving later in the month." Compl. ¶36. Further, while SAF chides the AGO for not yet having finished its productions, they ignore the expansive nature of their ten-part PRR. *See* Fraas Ex. 3. Because the AGO is continuing to respond to SAF's PRR, their claim is premature.

## III. CONCLUSION

SAF's Complaint should be dismissed.

DATED this 17th day of November 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ Lauryn K. Fraas*
LAURYN K. FRAAS, WSBA #53238
ALEXIA DIORIO, WSBA #57280
Assistant Attorneys General
MARSHA CHIEN, WSBA #47020
Deputy Solicitor General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Lauryn.Fraas@atg.wa.gov
Alexia.Diorio@atg.wa.gov
Marsha.Chien@atg.wa.gov
*Attorneys for Defendants Robert Ferguson, Joshua Studor, and the Attorney General's Office for the State of Washington*

I certify that this memorandum contains 4,192 words, in compliance with the Local Civil Rules.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS -- NO. 2:23-cv-01554-MJP

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744