UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SECOND AMENDMENT FOUNDATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROBERT FERGUSON, et al., <br><br> Defendants. | CASE NO. C23-1554 MJP <br><br> ORDER GRANTING MOTION TO DISMISS |

This matter comes before the Court on Defendants' Motion to Dismiss. (Dkt. No. 8.) Having reviewed the Motion, the Response (Dkt No. 14), the Reply (Dkt. No. 16), the Surreply (Dkt. No. 18), and all supporting materials, the Court GRANTS the Motion and DISMISSES this action for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiffs, the "conservative activist Alan Gottlieb and a number of nonprofit and other [for-profit] entities" of which Gottlieb is either an officer or owner, allege that Attorney General Robert Ferguson, his Assistant Attorney General Joshua Studor, and the AG's Office have

targeted them through a sham civil investigation in an effort to silence their gun rights advocacy. (Complaint at 2-3 (Dkt. No. 1-2).) The AG's Office has served Civil Investigative Demands (CIDs) on each corporate entity and two on Gottlieb ostensibly to investigate possible violations of Washington's consumer protection laws. (Id. at 3-4.) Plaintiffs also learned that CIDs have been served on "vendors and business associates" who are not part of this lawsuit. (Id. at 4.) Although Plaintiffs voluntarily produced documents and Gottlieb sat for a deposition, they now allege that they believe AG's two-year-old investigation is an "invasive and expensive harassment because of [Plaintiffs'] political beliefs and activities, including their positions on gun control, their outspoken public criticism of Mr. Ferguson, and their legal challenges to his actions and policies." (Id. at 4-5.) The Court reviews the salient factual allegations from the Complaint and the procedural history of this action.

**A.    Factual Allegations**

In addition to Gottlieb, Plaintiffs include four nonprofits and two for-profit entities. The Second Amendment Foundation (SAF) and the Citizens Committee for the Right to Keep and Bear Arms (CCRKBA) are nonprofits that advocate in favor of gun ownership, including "bringing litigation challenging laws they believe are unconstitutional," and educating the public. (Compl. at 2-3.) The Center for Defense of Free Enterprise (CDFE) is a nonprofit organization that advocates for "the free enterprise system and individual economic and property rights." (Id. at 3.) And The Service Bureau Association (TSBA) is a nonprofit that "provides support services" to the other three nonprofit entities. (Id.) Liberty Park Press is a for-profit "media company that operates a website dedicated to providing news to the public so people can make informed decisions to protect their personal liberties." (Id.) Lastly, Merril Mail Marketing (MMM) "is a publishing company that has released pro-Second Amendment titles." (Id.)

1  Plaintiffs allege that they "often find themselves at odds with" Attorney General Ferguson, who "has often been a vocal proponent of gun control measures." (Compl. at 3.) Plaintiffs allege that Ferguson "has made his antipathy to conservative policies and politicians a mark of pride throughout his time in office." (Id. ¶ 13.) Plaintiffs allege that "gun control policy has been one of Mr. Ferguson's primary focuses while in office," which he assumed in 2012, and they cite Ferguson's gun control legislative efforts dating back to 2018. (Id. ¶¶ 8, 21-22.) Plaintiffs note they have clashed in the courtroom with Ferguson on at least eight different gun-control related cases since Ferguson took office. (Id. ¶ 24.) And Plaintiffs allege they have tussled with Ferguson in the media over the past five-to-six years. (Id. ¶ 25.)

The AG's Consumer Protection Division (CPD) and Studor began to investigate Gottlieb and SAF at an "unidentified time more than two years ago." (Compl. ¶ 27.) On May 5, 2022, the CPD issued CIDs on Gottlieb, SAF, and "other entities associated with Mr. Gottlieb." (Id. ¶ 31.) Plaintiffs allege that "[a]lthough the investigation was carried out at Mr. Ferguson's instruction and in accordance with his policies, the demands were signed by Mr. Studor on behalf of Mr. Ferguson[.]" (Id.) They also allege that as early as June 2021, CPD had issued a CID to SAF's accountants and obtained a "gag order from King County Superior Court that had the practical effect of totally preventing SAF's accountants from speaking with SAF, interrupting SAF's ability to timely complete audits of its finances." (Id. ¶ 28.) And at around this same time, "CPD served similar demands and gag orders on an array of other third parties, including the essential vendors that make the activities of SAF and the other CID recipients possible." (Id. at ¶ 29.) But Plaintiffs are not aware of the precise number or terms of the CIDs.

Rather than fight the CIDs and because they "hav[e] nothing to hide," Plaintiffs voluntarily provided documents and deposition testimony to CDP, notwithstanding their claim

ORDER GRANTING MOTION TO DISMISS - 3

that they have never understood the point of the investigation. (Compl. ¶ 32.) In responding to the CIDs, Plaintiffs claim to have incurred over $100,000 in legal fees and "hundreds of man hours drafting and providing dozens of detailed written answers and reviewing and producing tens of thousands of pages of financial records, personal correspondence, and CPA private information." (Id.) But Plaintiffs do not allege that their right to free speech has been chilled. At most, they allege that Ferguson "hope[s] to chill Plaintiffs' First Amendment activity by driving up the cost of disagreeing politically with the Attorney General, making their lives miserable, and wasting the time and money that could otherwise go towards their mission." (Id. ¶ 42.)

In a purported effort to divine the Attorney General's intent behind the CIDs, counsel for Plaintiffs submitted a Public Records Act request in August 2022. (Compl. ¶ 34.) Plaintiffs allege the AG's response has been slow, misleading, and incomplete. (See, e.g., id. ¶¶ 34-37, 39.)

Plaintiffs pursue three claims under 42 U.S.C. § 1983. First, they allege that Ferguson and Studor violated the First and Fourteenth Amendments by discriminating against them through the CID process on account of their political views. (Compl. ¶¶ 47-51.) Second, they allege that Ferguson and Studor violated the First and Fourteenth Amendments by using the CID process to retaliate against them because of "Plaintiffs' protected conduct"—which is not separately identified. (Id. ¶¶ 58-59.) Third, Plaintiffs allege that Ferguson and Studor violated the Fourth and Fourteenth Amendments by issuing CIDs that exceed their statutory authority. (Id. ¶¶ 60-64.) Plaintiffs also bring a state law abuse of process claim related to the CIDs and a Public Records Act (PRA) claim. (Id. ¶¶ 65-76.) Plaintiffs seek declaratory and injunctive relief, the destruction or return of documents obtained from the CID process, damages, attorneys' fees, costs, and all other "equitable and/or legal remedies." (Id. at 34-35.)

ORDER GRANTING MOTION TO DISMISS - 4

B.      **Procedural History**

This is not the first time this lawsuit has been before the Court. Plaintiffs filed essentially the same complaint in the Western District, which was pending before the undersigned. Second Am. Found., et al. v. Ferguson, et al., C23-654 MJP (W.D. Wash.). In response to the lawsuit, Defendants filed a motion to dismiss, which included all of the same arguments asserted in the pending Motion to Dismiss, plus an abstention argument that is now absent. See id., Dkt. No. 14 (W.D. Wash. June 12, 2023). Rather than oppose the motion, Plaintiffs voluntarily dismissed the claims without prejudice, and refiled the lawsuit in state court. Plaintiffs allege they did so to avoid "litigating ancillary issues of federal jurisdiction," which they saw as a "waste of time and resources and a distraction from the underlying merits" of the claims. (Compl. ¶ 45.) After Plaintiffs refiled in King County Superior Court, Defendants removed the action to this Court and the matter was transferred to the undersigned. Defendants again move to dismiss on the same grounds as originally asserted, though without any abstention arguments.

## ANALYSIS

A.      **Legal Standards**

Defendants challenge the Court's subject matter jurisdiction under Rule 12(b)(1). Such challenges may be either "facial" or "factual." "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). "A 'factual' attack, by contrast, contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." Id. Defendants appear to pursue a facial attack. (See MTD at 4 (citing the "facial" attack standard as the one applicable to their motion).) As such, the Court will resolve the

1  challenge "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's
2  allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court
3  determines whether the allegations are sufficient as a legal matter to invoke the court's
4  jurisdiction." Id.

5  Defendants also move for dismissal of the claims on their merits under Rule 12(b)(6),
6  arguing that even if the Court has jurisdiction, Plaintiffs have not stated a claim. "A complaint
7  may fail to show a right of relief either by lacking a cognizable legal theory or by lacking
8  sufficient facts alleged under a cognizable legal theory." Woods v. U.S. Bank N.A., 831 F.3d
9  1159, 1162 (9th Cir. 2016). In ruling on a Rule 12(b)(6) motion, the Court must accept all
10 material allegations as true and construe the complaint in the light most favorable to the non-
11 movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998).
12 The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief
13 that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic
14 Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

15 **B.      Plaintiffs' Federal Claims and State Law Abuse of Process Claims Are Unripe**

16 Defendants correctly argue that Plaintiffs' claims, except the PRA claim, are both
17 constitutionally and prudentially unripe. And, as explained in the final subsection, the Court
18 finds Plaintiffs' waiver arguments devoid of merit.

19 **1.      The Two Ripeness Standards**

20 As one of the three parts of Article III's justiciability requirements, ripeness "is drawn
21 both from Article III limitations on judicial power and from prudential reasons for refusing to
22 exercise jurisdiction." Ass'n of Irritated Residents v. EPA, 10 F.4th 937, 944 (9th Cir. 2021).
23 "'The basic rationale of the ripeness requirement is to prevent the courts, through avoidance of
24

1  premature adjudication, from entangling themselves in abstract disagreements." <u>Twitter, Inc. v.</u>

2  <u>Paxton</u>, 56 F.4th 1170, 1173 (9th Cir. 2022) (quoting <u>Portman v. Cnty. of Santa Clara</u>, 995 F.2d

3  898, 902 (9th Cir. 1993) (citation and quotation omitted)). The Ninth Circuit "separate[s] out the

4  constitutional and prudential components of ripeness" into two separate inquiries. <u>Id.</u>

5  Constitutional ripeness is "synonymous with the injury-in-fact prong of the standing inquiry." <u>Id.</u>

6  (quotation and citation omitted). Meanwhile, prudential ripeness concerns "'both the fitness of

7  the issues for judicial decision and the hardship to the parties of withholding court

8  consideration.'" <u>Irritated Residents</u>, 10 F.4th at 944 (quoting <u>Abbott Labs. v. Gardner</u>, 387 U.S.

9  136, 149 (1967)).

10      In the following two subsections, the Court examines the constitutional and then the

11  prudential ripeness of Plaintiffs' claims.

12      **2.    Plaintiffs' Claims Are Not Constitutionally Ripe**

13      Defendants argue that Plaintiffs' claims are constitutionally unripe because they have not

14  identified an injury in fact. The Court agrees.

15      To satisfy the constitutional component of ripeness, the plaintiff must identify an injury

16  in fact, which is an "'an invasion of a legally protected interest that is (a) concrete and

17  particularized[,] and (b) actual or imminent, not conjectural or hypothetical.'" <u>Twitter</u>, 56 F.4th

18  at 1173 (quoting <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992) (internal citations and

19  quotations omitted)). Because Plaintiffs pursue two First Amendment claims, the Court applies

20  the "requirements of ripeness and standing less stringently[.]" <u>Id.</u> at 1173–74 (citation and

21  quotation omitted). But this "does not mean . . . that any plaintiff may bring a First Amendment

22  claim by nakedly asserting that his or her speech was chilled[.]" <u>Id.</u> at 1174 (citation and

23  quotation omitted).

24

ORDER GRANTING MOTION TO DISMISS - 7

1    Traditionally the court analyzes standing and ripeness differently as between a pre-
2    enforcement challenge to a regulation impacting speech and a first amendment retaliation claim.
3    See Twitter, 56 F.4th at 1173-75. But in circumstances nearly identical to those presented here,
4    the Ninth Circuit held that First Amendment claims premised on a civil investigation by an
5    attorney general should be analyzed under the "retaliatory framework," rather than the "pre-
6    enforcement" framework. See id. at 1175. The Court applies that same analysis here given the
7    similarity of the claims. Under this framework, the Court "focuses directly on the three elements
8    that form the 'irreducible constitutional minimum' of Article III standing." Twitter, 56 F.4th at
9    1174 (quoting Lujan, 504 U.S. at 560). "To establish standing in a First Amendment retaliation
10   case, a plaintiff must show '(1) an injury in fact, (2) a sufficient causal connection between the
11   injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a
12   favorable decision.'" Id. (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157–58
13   (2014) (cleaned up)). "In the First Amendment context, 'the injury-in-fact element is commonly
14   satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled
15   from exercising his right to free expression.'" Id. (quoting Edgar v. Haines, 2 F.4th 298, 310 (4th
16   Cir. 2021), cert. denied, ––– U.S. –––, 142 S. Ct. 2737, 212 L.Ed.2d 796 (2022) (internal
17   quotations and citations omitted)).

18   Plaintiffs have failed to identify an injury in fact caused by the CIDs and the AG's
19   investigation. Crucially, the Complaint does not allege that Plaintiffs' speech has been chilled. At
20   most, Plaintiffs allege that Defendants "hope to chill Plaintiffs' First Amendment activity by
21   driving up the cost of disagreeing politically with the Attorney General, making their lives
22   miserable, and wasting the time and money that could otherwise go towards their mission."
23   (Compl. ¶ 42.) This is not an allegation of actual, chilled speech, and it cannot support a finding
24

ORDER GRANTING MOTION TO DISMISS - 8

of an injury in fact even though the Court applies a "less stringent[]" standard. See Twitter, 56 F.4th at 1173-74.

Plaintiffs' Complaint effectively concedes that Plaintiffs' speech has not been chilled, and they instead allege that "no speech actually needs to be chilled in order for a plaintiff to bring a First Amendment claim based on a discriminatory, retaliatory investigation." (Compl. ¶ 45 n.17 (citing White v. Lee, 227 F.3d 1214, 1241 (9th Cir. 2000)).) Although Plaintiffs invoked White in their Complaint, they abandon reliance on it in their Response brief, calling instead on out-of-circuit authority to make the same point. (See Opp. at 8-9.) But the Ninth Circuit in Twitter expressly rejected the notion that White might save the ripeness of a First Amendment retaliation claim plagued by insufficient allegations of a concrete injury in fact. First, the Court noted that White "doesn't address ripeness at all." Twitter, 56 F.4th at 1177. Second, the Ninth Circuit noted that White was limited by the fact the plaintiff there "would have had no opportunity to challenge any aspect of the investigation until formal charges were brought, at which point they could have faced a large fine." Id. (citing White, 227 F.3d at 1222). As was the case in Twitter, Plaintiffs here can raise their First Amendment challenges if the Attorney General moves to enforce the CIDs—a point Defendants concedes in their reply. (See Reply at 2.) And Plaintiffs appear able to force such a challenge by deciding to cease their voluntary compliance. The Court finds the Ninth Circuit's reasoning in Twitter applies equally to the allegations presented in this matter. This renders White and the similar out-of-circuit authority on which Plaintiffs rely to be inapplicable. Plaintiffs cannot show an injury in fact merely by alleging a retaliatory investigation.

The Court also remains unconvinced that Plaintiffs have identified an injury by citing to the $100,000 in legal fees and lost "man hours" they incurred in responding to the CIDs that they

would have put to use in further speech activity. As the Ninth Circuit pointed out in Twitter, the costs and burdens associated with voluntary compliance with a CID are not evidence of an injury in fact. See Twitter, 56 F.4th at 1175-76. While the Court's decision in Twitter turned, in part, on the fact that the plaintiff sought no monetary damages, its reasoning also turned on the fact that the "enforceability of the CID remain[ed] an open question." Id. at 1175. So while Plaintiffs here do seek damages, the enforceability of the CIDs remains untested. See id. This renders the holding in Twitter dispositive. All of the costs and burdens associated with Plaintiffs' compliance with the CIDS do not evidence an injury in fact because they voluntarily chose to assume them.

Plaintiffs also suggest that they have identified cognizable injuries by virtue of "defamatory third-party CIDs and gag orders sent to business associates" that have "damaged Plaintiffs' reputation and disrupted their operations." (Opp. at 9 (citing Compl. ¶ 30).) But the cited allegations do not align with this argument. The sole section of the Complaint Plaintiffs identify states that "[t]he CIDs and gag orders themselves, as designed, severely damaged plaintiffs' reputations and ability to work with the third-party CID recipients, who could easily decide working with plaintiffs is not worth the legal bills and potential liability." (Compl. ¶ 30.) This is a conclusory allegation of harm. There is no allegation of how the CIDs or gag orders caused a reputational harm or what that harm was. And Plaintiffs have not alleged any of the third-parties has actually decided not to work with Plaintiffs. As Defendants point out, the gag orders are put in place to help protect public disclosure of the existence of the CIDs to third-parties and it was only Plaintiffs' decision to commence this lawsuit that made the information public. These conclusory allegations do not satisfy the injury-in-fact requirement.

1    Plaintiffs suggest that they also suffered an injury in fact because the CIDs forced them to
2    "disclos[e] private information" and this amounts to an "intru[sion] upon their seclusion." (Opp.
3    at 9 (citing TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2204 (2021)).) This skinny argument
4    has no legs. First, the three paragraphs of the Complaint Plaintiffs cite do not identify a public
5    disclosure of private information. (See id. (citing Compl. ¶¶ 43, 60-61).) By its nature, the CID
6    does not render the information publicly disclosed beyond the AG's office. Indeed, Plaintiffs
7    voluntarily chose to publicly expose the nature of any materials provided in response to the
8    CIDs. Second, the TransUnion case that Plaintiffs cite—the only authority cited—did not
9    examine whether the kind of harm alleged here satisfies standing. Rather, it examined whether
10   standing could be shown when the plaintiff only alleged a statutory violation without some other
11   concrete harm. See TransUnion, 594 U.S. 413, 428. The case does not support Plaintiffs' bald
12   assertion, and the Court rejects this argument.
13       Lastly, Plaintiffs argue that Gottlieb and his family (who are not named parties) suffered
14   "great stress and emotional damage" that has strained "Gottlieb's health." (Opp. at 9 (citing
15   Compl. ¶¶ 45 n.17, 58).) These allegations fall short of establishing an injury in fact. First,
16   Plaintiffs identify no case law to support the theory that emotional stress or strain on personal
17   health is a cognizable injury in fact in the context of a First Amendment claim. Second, the
18   alleged emotional damages are entirely vague and there are no detailed allegations that any part
19   of the CID process has actually impacted Gottlieb's health. As the Complaint makes clear,
20   Gottlieb touts his long history of sparring with Ferguson in the press and in court and there are
21   no allegations that any alleged emotional or physical harms arising out of the CID process have
22   limited those activities. The Court finds these allegations insufficient to show an injury in fact.

In sum, Plaintiffs have failed to identify a cognizable injury stemming from their First Amendment claims that might show why they are constitutionally ripe. The Court GRANTS the Motion as to the First Amendment claims, and DISMISSES them.

And while Defendants did not separately analyze the ripeness of the Fourth Amendment or abuse of process claims, the Court finds them defective for the same reasons as the First Amendment claims. That is because the Fourth Amendment and abuse of process claims turns on the argument that the AG exceeded his statutory authority in issuing overbroad CIDs and otherwise abused the CID process. In other words, the Fourth Amendment and abuse of process claims are permutations and derivative of the First Amendment claims. The same injuries identified as to the First Amendment claim are therefore implicated and they do not satisfy the constitutional injury requirement for the additional claims, rendering them unripe. Indeed, Plaintiffs can pursue the Fourth Amendment and abuse of process claims should they actually challenge the enforceability of the CIDs. For these reasons, the Court GRANTS the Motion as to the Fourth Amendment and abuse of process claims and DISMISSES them.

But because the PRA claim turns on a different set of allegations and considerations, and Defendants failed to make their ripeness arguments as to this claim, the Court does not dismiss the claim on ripeness grounds. The Court discusses this claim in Section C, below.

### 3. Plaintiffs' Claims Are Not Prudentially Ripe

Because Plaintiffs have failed to show an injury in fact sufficient to satisfy constitutional ripeness considerations, the Court need not reach prudential ripeness. But even if Plaintiffs had made such a showing, the Court finds that the claims are not prudentially ripe. This is an alternative basis on which the Court GRANTS the Motion as to the First and Fourth Amendment and abuse of process claims.

1  "In evaluating the prudential aspects of ripeness, our analysis is guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Thomas v. Anchorage Equal Rts. Comm'n, 220 F.3d 1134, 1141 (9th Cir. 2000) (citation and quotation omitted). Where the claims rest on "hypothetical situations" and an inadequately developed factual record, the claims are generally found unripe. Id. And as to the hardship analysis, it "dovetails, in part, with the constitutional consideration of injury," where "the absence of any real or imminent threat of enforcement, particularly criminal enforcement, seriously undermines any claim of hardship." Id. at 1142.

Plaintiffs' federal claims and abuse of process claim are prudentially unripe. First, the CID investigation remains ongoing—the AG's office has yet to conclude the investigation or bring an enforcement action. Any determination of whether the investigation is improper or the CIDS are unenforceable relies on an incomplete factual record. Either way, the claims all turn on a limited and incomplete record, which satisfies the first consideration. Second, Plaintiffs have not identified any hardship from withholding judicial consideration. As Defendants concede, Plaintiffs can bring their federal and state law claims should they challenge the CIDs. And it appears they can force an enforcement action should they simply cease voluntarily complying with the investigation. It also appears they can bring their claims once the investigation it is complete. As explained in the constitutional ripeness analysis, there is no concrete injury here sufficient to sustain this element of the prudential ripeness consideration. On this independent basis, the Court GRANTS the Motion and DISMISSES the First and Fourth Amendment and abuse of process claims as prudentially unripe.

### 4. Removal Does Not Waive Ripeness Arguments

Plaintiffs argue that Defendants waived any ability to make ripeness challenges by removing this action to federal court. This argument lacks merit.

None of the cases Plaintiffs cite in support stands for the proposition that a defendant waives the ability to make ripeness challenge by removing claims to federal court. Instead, all of the cases on which Plaintiffs rely concern issues unique to Fifth Amendment Takings Clause claims that have no application here, as the Court explains below.

Plaintiffs' argument builds on a now-overruled case, where the Supreme Court held a plaintiff's Takings claim will only be ripe if their property is taken and their claim for compensation has been exhausted and denied. Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 194 (1985), overruled by Knick v. Twp. of Scott, Pennsylvania, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019). In other words, unless the landowner exhausted efforts to obtain just compensation, a Takings claim was unripe. Several years later, the Supreme Court explained that the ripeness rule announced in Williamson concerned only prudential ripeness, not Article III's constitutional ripeness requirement affecting subject matter jurisdiction. Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1013 (1992). Building on Williams and Lucas, the Fourth Circuit and several district courts then concluded that by removing a Takings claims alleged in a state court action, a government defendant can be found to waive a ripeness challenge premised on the plaintiff's failure to exhaust state law remedies to obtain just compensation for taken property. See Sansotta v. Town of Nags Head, 724 F.3d 533, 544 (4th Cir. 2013) (holding that the government defendant "waived the state-litigation requirement by removing the case to federal court"); River N. Properties, LLC v. City & Cnty. of Denver, No. 13-CV-01410-CMA-CBS, 2014 WL 1247813, at *7 (D. Colo. Mar. 26, 2014); ELH

LLC v. Westland Irrig. Dist., No. 2:16-CV-1318-SI, 2017 WL 1055960, at *3 (D. Or. Mar. 20, 2017) (same); (Pls. Op. at 6-8 (citing these three cases).

These cases do not support Plaintiffs' argument. First, the doctrine announced in Williamson was expressly limited to Takings claims and the now-overruled requirement that a plaintiff must exhaust state law remedies to obtain just compensation. Plaintiffs here do not pursue Takings claims and nothing in the line of Williamson cases suggests that its reasoning applies outside of the Taking Clause. Second, even if these cases stood for the general principle that a defendant waives state law exhaustion requirements by removing an action, it would not apply here. Defendants' prudential ripeness arguments turn not some exhaustion requirement, but rather on the fact that the factual record on which the claims turn is unsettled and incomplete. (See MTD at 8-11.) Unlike an exhaustion requirement that merely requires the applicant to seek and be denied just compensation, here, the ongoing nature of the investigation impacts the core facts on which the actual claims turn. Thus, there is no basis to conclude that Defendants have waived the prudential ripeness arguments as was found in the cases Plaintiffs cite as to Takings claims.

Additionally, Plaintiffs' waiver argument has no possible impact to the Defendants' constitutional ripeness arguments. That is because the Williamson cases concern only prudential ripeness, not Article III (or constitutional) ripeness. See Lucas, 505 U.S. at 1013. And Article III's subject matter jurisdiction requirements cannot be waived by the parties, including through removal. See United States v. Cotton, 535 U.S. 625, 630 (2002) (holding that subject-matter jurisdiction cannot be waived or forfeited).

ORDER GRANTING MOTION TO DISMISS - 15

C.     **Dismissal of Plaintiffs' State Law PRA Claim for Lack of Supplemental Jurisdiction**

Given the Court's dismissal of the federal claims that are the only claims that might confer original jurisdiction over this dispute, the Court declines to exercise supplemental jurisdiction over the remaining PRA claim.

A district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction. See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 725–26 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") The Court follows and applies the logic announced in Gibbs given that it has no jurisdiction over the federal claims that might confer original jurisdiction. And even though the PRA claim relates to the AG's investigation, it presents separate issues that appear capable of resolution through a separate state court action that can be conducted even if the other claims remain unripe. There is no valid reason to exercise supplemental jurisdiction over the PRA claims and dedicate federal resources to resolve this issue of pure state law. The Court therefore declines to exercise supplemental jurisdiction and DISMISSES the PRA claim.

D.     **Attorneys' Fees**

Defendants request the Court award them fees under 42 U.S.C. § 1988 on the theory that they should be considered the prevailing party on Plaintiffs' § 1983 claims. To make such an award, the Court would need to find that Plaintiffs' action was "unreasonable, frivolous, meritless, or vexatious." Vernon v. City of Los Angeles, 27 F.3d 1385, 1402 (9th Cir. 1994). Construing the allegations in the Complaint in Plaintiffs' favor, the Court declines to find that they are unreasonable, frivolous, meritless, or vexatious. The Court's finding is driven, in part, by the fact that it has only analyzed the claims as to ripeness, not on their merits. The Court

remains unconvinced that an award of fees is appropriate on the record before it and it REJECTS Defendants' request.

## CONCLUSION

Plaintiffs' First and Fourth Amendment and abuse of process claims are not ripe for adjudication. Plaintiffs have not sufficiently identified an injury in fact necessary to satisfy the constitutional ripeness considerations of Article III. And, alternatively, even if they had, the Court finds that they are not prudentially ripe. The Court therefore DISMISSES these claims as unripe without prejudice. And the Court declines to exercise supplemental jurisdiction over the last claim—the PRA claim. The Court DISMISSES the PRA claim without prejudice. And while the Court declines to award attorneys' fees, it GRANTS Defendants' Motion and DISMISSES this action.

The clerk is ordered to provide copies of this order to all counsel.

Dated January 9, 2024.

Marsha J. Pechman
United States Senior District Judge